401 A.2d 1142

**In re Dennis J. COGAN, Contemnor.**

Supreme Court of Pennsylvania.

Argued April 27, 1979.

Decided May 31, 1979.

---

274

Mark E. Kogan, Norris E. Gelman, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Dennis J. Cogan, Esq. entered an appearance as defense counsel on behalf of a client charged with murder of the first degree. On December 15, 1976, the Court of Common Pleas of Philadelphia, Sabo, J., conducted a sup-

pression hearing. Over the course of the hearing, there were several exchanges between counsel and the court. At the end of one exchange appellant was summarily convicted of criminal contempt of court and fined $100. On appeal, we are asked only to review whether the record supports the conviction. We reverse.

I

At the suppression hearing, the defendant disputed that his arrest was based on probable cause. The defendant had been arrested on the basis of statements obtained during the interrogation of another suspect. A police officer was called by the Commonwealth at the suppression hearing to describe the suspect's interrogation. The officer's cross-examination was interrupted by an exchange between appellant and the court. To properly evaluate the consequences of appellant's conduct on the orderly progress of the suppression hearing, we must refer to the relevant portions of the record.

"MS. TEMIN [District Attorney]: Objection, your Honor.

MR. COGAN: It goes to credibility, your Honor.

MS. TEMIN: It is argumentative, your Honor.

MR. COGAN: Credibility is . . .

THE COURT: I think he has already testified that he does this as a matter of course. He doesn't tell them everything. He just gives them a few points, so that if there is anything left out later on that he knows about, he can tell whether or not the person that he is interviewing is giving him the whole story or not. Isn't that what you said before?

THE WITNESS: Yes.

THE COURT: I haven't made any determination, but you are asking for something else.

MR. COGAN: All right. If it is your position . . .

THE COURT: I will have to rule on the other thing, and I can't do that right now because I don't even know what it is.

MR. COGAN: If it is your position that the police did not have to have probable cause . . .

THE COURT: I didn't say that. I said if he is implicated by another codefendant, what in the world do you expect him to do but to bring him in for questioning?

MR. COGAN: I am not saying they didn't have the right to do that.

THE COURT: Well, what are you saying?

MR. COGAN: I would say it if you would stop interrupting me, Judge. I have been trying to get it out for the last ten minutes.

THE COURT: Please don't tell me to stop interrupting you. I will hold you in contempt if you say that once more to me. You can make all the argument you wish, but watch your tone as you speak to me. You will remember that I am the judge of this courtroom, and you are merely counsel for the defense. Remember that.

MR. COGAN: I am not unmindful of that, sir.

THE COURT: Well, I think you are. I am trying to understand you, so I can make an intelligent decision. Now, go ahead.

MR. COGAN: I don't see how that answers my questions about why he didn't record it. He recorded . .

THE COURT: The fact you are making, he admits he didn't record it.

MR. COGAN: I am asking if there is any particular reason why he didn't.

THE COURT: I don't know that that is material, Counselor. He didn't record it, and that is it, period.

MR. COGAN: Note my exception. If I am not permitted to ask that question, fine."

The dispute concerning probable cause arose again later.

"MR. COGAN: The question is whether they had probable cause in order to do that.

THE COURT: Well, what is this Court supposed to do . . .

MR. COGAN: It is not my purpose to tell the Court or police how to go about doing their job. The Supreme Court set those standards.

THE COURT: They talk about probable cause, they are talking about something else, but when you have somebody who is implicated in a crime that implicates someone else, what are the police supposed to do?

MR. COGAN: I am not saying that that would not be probable cause. What I am saying is, you haven't had enough information yet to make that determination.

BY MR. COGAN:

Q. Did you make any notations regarding the defendant's physical condition at the time you were interrogating him?

A. Mentally only, sir.

Q. Excuse me.

A. Mentally only.

Q. And again you are relying only on your recollection; is that right?

A. That is right.

Q. How many defendants have you interrogated since August tenth, 1976?

MS. TEMIN: Objection, your Honor.

THE COURT: Sustained.

BY MR. COGAN:

Q. In other words, this is a result of your independent recollection, your mental recording of what happened that day, and not as a result of any reference to any written recording anywhere; is that right?

A. If you are referring to his condition at the time of this statement, yes.

Q. You have a vivid recollection . . .

MS. TEMIN: Objection to the characterization. The officer didn't say that.

MR. COGAN: I am asking him if he had a vivid recollection.

THE COURT: He said that based solely on his recollection. He did not put anything in writing. He is depending solely on his own recollection.

MR COGAN: That is right. And I am now asking a different question.

BY MR. COGAN:

Q. I am asking did you have a vivid recollection that day . . .

MS. TEMIN: Objection.

THE COURT: I sustain the objection. What you may mean by vivid, what she means by vivid and what I mean by vivid is all subject to a different interpretation. The fact still remains he didn't put anything in writing. Okay, Counselor? He didn't put down anything on paper.

MR. COGAN: That may question the credibility, Judge. I am trying to establish what is the degree of his recollection that day, and in fact his answer to that question is that it was very vivid. I am going to test that, and I am going to test it by . . .

THE COURT: Just ask the question. All right. Just ask the question. Repeat your question again in a different way, and if she objects, I will rule on it. If she doesn't, he will answer the question.

BY MR. COGAN:

Q. Do you have a vivid recollection of what occurred that day regarding his physical condition?

MS. TEMIN: Objection to the word "vivid".

THE COURT: Sustained.

BY MR. COGAN:

Q. Do you know what I mean when I use the word "vivid"?

A. Detailed.

Q. Yes. Do you have a detailed recollection of what my client's physical condition was that day?

A. No, sir.

A. And I take it, then, that you are not in a position to say whether he was sleepy that day, for example?

MS. TEMIN: Objection, I believe it would be proper and appropriate for Mr. Cogan to ask the officer what he observed, or whether he observed one particular thing, but to ask him whether he was in a position to observe particular things, it was argument and objectionable on many grounds.

MR. COGAN: I don't know how I can proceed by asking him the question the way the district attorney suggests. I think I should be able to plod along in my own way, if she doesn't mind. I am asking a question which is very relevant in this proceeding. If she thinks it would be more effective to ask the question in a different way that is not the issue.

THE COURT: We are wasting a lot of time over nothing. Go ahead.

MR. COGAN: I object to that, too.

THE COURT: I said ask the question.

MR. COGAN: I object to the Court making a decision . . .

THE COURT: I am not making a decision. I am telling you to ask a question.

MR. COGAN: I want to state an objection for the record.

THE COURT: You can do anything for the record. Sit down and ask the question, will you, Counselor? If you don't sit down, I am going to hold you in contempt. Do you hear me?

MR. COGAN: Yes. I have an objection. May I state it?

THE COURT: You are in contempt. I fine you a hundred dollars. Now, go ahead. Ask the question. Now, go ahead and ask your question.

MR. COGAN: May I address the Court?

THE COURT: No, you may not. You ask the question. Cross-examine this witness. Now, go ahead.

MR. COGAN: I have an objection.

THE COURT: I ruled on it, and it cost you a hundred dollars. It is a hundred dollar fine for contempt of court. Now, go ahead and ask the question.

MR. COGAN: May I have it read back?

THE COURT: Just make up another question. It has been muddled in there, and we will spend all day. Just make up your next question."

The court cited the above exchanges as the basis for sustaining the criminal contempt conviction.

## II

Courts have the power summarily to convict those before them of criminal contempt of court. Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041, reenacted as 42 Pa.C.S.A. § 4131; see also ABA *Project on Standards for Criminal Justice, Standards Relating to The Function of the Trial Judge* § 7.1 (Approved Draft 1972). This Court has previously construed the criminal contempt statute, *In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976) and we note that immediately after our decision in *Johnson*, supra, the Legislature reenacted the Act of 1836 contempt statute using identical language.[1] Each subsection of the statute is intended to penalize a different class of contemnor. *In re Johnson*, 467 Pa. at 556–57, 359 A.2d at 741–42. Subsection I permits the court to compel proper performance of a ministerial duty by a Commonwealth official. Subsection II provides a means of punishing those who negligently or

---

1. The Act of 1976 became effective in 1978. This appeal is controlled by the Act of 1836, which provides:
 "Classification of penal contempts
 The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, [to-wit]:
 I. To the official misconduct of the officers of such courts respectively;
 II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;
 III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."
 (Brackets added.) The bracketed phrase was deleted in the Act of 1976.

wilfully fail to comply with lawfully issued orders, decrees and process. Finally, subsection III grants the court power to punish one who interferes with the administration of justice, including failure to meet the standard of conduct necessary to effect a just and efficient resolution of matters before a court. *Johnson,* supra. Although the suppression court did not expressly specify the subsection under which it held appellant in contempt, "[t]he court found that Mr. Cogan's acts disrupted the dignity, order and decorum of the courtroom." Appellant's conviction, therefore, must be based on the court's authority under subsection III.

Criminal contempt of court is a criminal offense and thus every element of the offense must be established beyond a reasonable doubt. *Johnson,* supra, 467 Pa. at 557, 359 A.2d at 742. "To prove criminal contempt of court which may be acted upon under authority of subsection III of the Act of June 16, 1836, the Commonwealth must prove an improper intent, an action and an obstruction of the administration of justice." *Johnson,* supra, id.

Courteous, considerate and decorous conduct in the courtroom is not only in harmony with the American sense of fair play, it makes good sense and is also an essential ingredient of effective advocacy. Counsel could well model courtroom conduct on the American Bar Association's *Standards Relating to The Function of the Trial Judge,* supra, § 6.4:

"The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions . . . and he should otherwise avoid conduct on his part which tends to demean the proceedings . . . limiting his comments and rulings to what is reasonably required for the orderly progress of the trial."

See also, *Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973). A controlled and well-mannered demeanor is mandated of advocates as well by the Code of Professional Responsibility:

"In appearing in his professional capacity before a tribunal a lawyer shall not . . . [e]ngage in undignified or discourteous conduct which is degrading to a tribunal." D.R. 7–106(C)(6), adopted as Pa.R.D.E., id. (1974). Appropriate decorum in the courtroom creates an impartial and judicious proceeding which assures the orderly and effective administration of justice. See ABA *Standards Relating to The Function of the Trial Court,* supra, § 6.4, Comment.

We must conclude, however, that appellant's inappropriate and ill-mannered conduct over the course of the suppression hearing did not obstruct or delay the hearing and therefore falls short of that misbehavior which may be punished under subsection III of the Act of 1836. While there is no doubt that counsel was impolite, the exchanges to which the suppression court referred in its opinion were at most momentary and appellant's attempts to place his objections on the record appear not to have impeded the progress of the hearing.

The record reveals that appellant's intent was not to obstruct justice, but to be, in his view, an effective advocate for a client charged with first degree murder. The intensity with which appellant attempted to place some of his objections on the record may have been unwise and exaggerated. Nonetheless, appellant could have reasonably misunderstood the hearing court's remark, "We are wasting a lot of time over nothing. Go ahead . . . ," to constitute a decision against the defendant on one of the questions in controversy at the hearing. In these circumstances, appellant's attempt to place his objection on the record does not provide the requisite intent to support a conviction for contempt. See *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978) (plurality opinion); *United States v. Mathis,* 175 U.S.App. D.C. 341, 535 F.2d 1303 (1976); *In re Dellinger,* 461 F.2d 389 (7th Cir. 1972); ABA *Standards Relating to The Function of the Trial Judge,* supra, § 5.7.[2] Finally, we note that the

2. Section 5.7 provides:
 "Duty of judge on counsel's objections and requests for rulings: The trial judge should respect the obligation of counsel to present

record indicates that appellant was given notice that he would be held in contempt if he failed to take his seat, but does not reflect whether appellant complied with the court's directive.

 We hold that on this record, appellant's conduct did not and was not intended to delay or obstruct justice and that, therefore, there is insufficient evidence upon which to affirm the conviction of criminal contempt of court.

Order of the court of common pleas reversed, and appellant discharged.

LARSEN, Justice, dissenting.

I dissent and in support thereof, cite the trial judge's (The Honorable Albert F. Sabo) opinion as follows:

On December 15, 1976, this Court sat to hear the defense Motion to Suppress Physical Evidence and Statements in the case of *Commonwealth of Pennsylvania v. Reggie Eaddy*, August Term, 1976, Nos. 1963–1967.

On one occasion during the Commonwealth's case, Mr. Cogan persisted in arguing with the Court after the Court made its rulings on evidence. (N.T. pp. 27–28).

On another occasion, Mr. Cogan, during discussion of a point, spoke in a manner demeaning to the Court in both tone and facial expression. Defense counsel became more and more indignant and disrespectful, especially during the following colloquy with the Court:

objections to procedures and to admissibility of evidence, to request rulings on motions, to make offers of proof, and to have the record show adverse rulings and reflect conduct of the judge which counsel considers prejudicial. Counsel should be permitted to state succinctly the grounds of his objections or requests; but the judge should nevertheless control the length and manner of argument."

"THE COURT: Well, what are you saying?

MR. COGAN: I would say it if you would stop interrupting me, Judge. I have been trying to get it out for the last ten minutes."

The Court warned Mr. Cogan to control himself and not to tell the Court its job. (N.T. p. 40).

Later, after the Court sustained the prosecution's objection to the phrasing of a question, Mr. Cogan twice used the very same question of a witness. (N.T. pp. 47–49).

Finally, Mr. Cogan got into a heated discussion with the district attorney over objections to defense questions. (N.T. p. 50). The Court told counsel to stop wasting time arguing and proceed. At this, Mr. Cogan lashed out, screaming at the Court: "I object to that, too." The comment was made in an arrogant and disrespectful manner in an attempt to mimic the district attorney's objections.

The Court again requested that Mr. Cogan ask a question. Mr. Cogan then proceeded to accuse the Court of having reached a decision. For yet a third time, the Court told Mr. Cogan to proceed. He continued to argue and was held in contempt. (N.T. p. 51).

The Court found that Mr. Cogan's actions disrupted the dignity, order and decorum of the courtroom. *Commonwealth v. Snyder*, 443 Pa. 433, 275 A.2d 312 (1971); *Commonwealth v. Gaston*, 460 Pa. 385, 333 A.2d 779 (Pa. Supreme Court, 1975.)."

NIX, Justice, dissenting.

I vigorously dissent from today's majority opinion. The majority of this Court believes that attorney Cogan's "misconduct cannot be condoned" and that it contravenes Disciplinary Rule 7–106(C)(6) of our Code of Professional Responsibility. It further characterizes appellant's conduct as "impolite," "unwise, unseemly and exaggerated," as well as "discourteous," "inappropriate and ill-mannered." These characterizations correspond with those made by the trial judge in his opinion. There it is stated that appellant

"spoke in a manner demeaning to the Court in both tone and facial expressions," appellant was "arrogant and disrespectful" and at one point he "lashed out, screaming at the Court."

The trial court found that appellant's misconduct had disrupted the dignity, order and decorum of his courtroom and found appellant in contempt, citing *Commonwealth v. Snyder*, 443 Pa. 433, 275 A.2d 312 (1971). In that case Chief Justice Bell wrote the following for a unanimous Court:

> . . . As this Court so pertinently said in *Levine Contempt Case*, 372 Pa. 612, page 618, 95 A.2d 222, page 225: "Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect."

> . . . . .

> As the Supreme Court of the United States so pertinently said in its recent decision in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, page 1061, 25 L.Ed.2d 353 pages 343–44, 346–47: "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. . . .

> ". . . But our courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. . . It would degrade our country and judicial system to permit our courts to be bullied, insulted, and humiliated . . .. [I]f our courts are to remain what the Founders intended, the citadels of justice, their proceeding cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the (Pennsylvania) trial judge in this case."

443 Pa. at 439–40, 275 A.2d at 316–317.

I agree with the trial judge that appellant's conduct was contumacious. I disagree with today's majority opinion that

286

*In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976), changes the law set forth in *Snyder*.

I therefore dissent.