431 A.2d 218

COMMONWEALTH of Pennsylvania

v.

Percy REID, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 19, 1981.

Decided July 2, 1981.

202

John W. Packel, Chief, Appeals Div., Leonard Sosnov, Asst. Defender, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Cynthia Severinsen, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is a direct appeal from a direct criminal contempt in a Court of Common Pleas. Jurisdiction is vested in this Court by § 722(4) of the Judicial Code, 42 Pa.C.S. § 722(4).

The appellant was held in contempt of court and sentenced to five and one-half months imprisonment under Subsection 3 of the Penal Contempt Statute which provides:

The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

. . . .

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

1976, July 9, P.L. 586, No. 142, § 2, eff. June 27, 1978. 42 Pa.C.S.A. § 4131.

The ultimate finding of contempt occurred on the second day of trial when the appellant refused to stand upon the opening of court and turned his back to the court. As appellant presents the case he would have this Court believe that his contumacious behavior consisted solely of his refusal to stand when in fact, this was just the last straw in a

course of unruly and disruptive conduct. In fact, the court was early alerted to the potential of the appellant to disrupt a legal proceeding when in the first ten minutes of the suppression hearing, while the attention of the court was directed to the witness testifying, the appellant took off civilian clothes provided for him and sat before the court in his socks and jockey shorts. This was merely one of several incidents obviously designed to create sufficient disturbance, delay and confusion to make a mockery of the proceedings.

After a thorough review of the record in this case, we are satisfied that the court acted properly and in fact, exercised great restraint and patience, and, accordingly, the lower court is affirmed.

Appellant presents four arguments: (1) that the trial judge improperly convicted him of summary contempt as his conduct did not cause an obstruction of the administration of justice; (2) that he was denied the minimum due process when the trial judge found him guilty of contempt and sentenced him to a term of imprisonment without giving him any opportunity to make a statement in his own behalf or mitigation of his behavior; (3) that his right to effective assistance of counsel was violated when the court asked appellant's counsel several questions concerning whether she had instructed appellant to stand on the opening of the court's proceedings; and (4) that the trial judge erred in not recusing himself and transferring the contempt charge to another judge for disposition since he allegedly had ceased to act with proper judicial restraint.

On August 10, 1978, a suppression hearing was held before Judge Edwin S. Malmed. Before the hearing began, appellant charged that his counsel, Public Defender, Ann E. Freedman, Esquire, had lied to him concerning where the clothes produced for him to wear in court had come from. He stated that they were not his clothes, that he was not going to put them on, and that he wanted court-appointed counsel. The record reveals that his attorney had placed several calls to members of his family in an attempt to obtain civilian clothing for appellant to wear. Earlier that

morning, the clothes appellant now refused to wear were delivered to the Public Defender's Office, presumably by a member of his family. He was taken upstairs to the cellroom to try on the clothes, and then he reappeared in the courtroom. Satisfied that the clothes were appropriately fitted and were a great improvement over the prison garb, the court proceeded with the hearing. The appellant continued to complain that they did not fit. The first witness was called to the stand, but appellant tore the clothes off and was sitting in court in his socks and underwear. At this point, the judge repeatedly advised appellant of the desirability of wearing civilian clothes and gave the appellant another opportunity to wear the clothes supplied. The court stated for the record that he could hold appellant in contempt of court but that he would exercise restraint. When informed that appellant had torn the clothing so as to make it unwearable the court ruled that appellant had waived any right to wear civilian clothes for that day's proceedings and directed he be dressed in his prison clothing. Following this disruption, appellant was taken to the cellroom to be dressed in his prison clothing and the court ordered the sheriffs to make sure the prison supplied the appellant with civilian clothes for the proceedings to take place the next day.

At the end of the motion to suppress, appellant was told that the jury would be selected the next day. After the court informed him that the jury would be selected by his counsel and himself, appellant stated he would not participate in picking a jury, which was noted for the record.

On the second day, before the jury panel was brought in, the appellant apologized to the court for his behavior the previous day and the court accepted his apology. Appellant, knowing that the judge had already heard and ruled on the suppression issue, then requested the exercise of his right to waive a jury trial. The Commonwealth opposed the request. The judge ruled that because he had already heard the motion to suppress, the appellant's request was denied. Appellant translated this into a charge that the judge was prejudiced and unfair. Appellant then stated that he want-

ed to obtain a private attorney, and asked to make a telephone call to his attorney. Having established through a brief colloquy with the appellant that he had a Public Defender because he was indigent, the court stated that it was too late for the appellant to make such a request and proceeded. Appellant continued to delay the proceeding by arguing with the court charging that the court was denying him his right to a private attorney. The record also reflects that the appellant refused to try on the suit the court ordered for him.

The appellant instructed his counsel not to participate in selection of jurors. The court urged the appellant to utilize the legal expertise of defense counsel, but appellant refused. The court then requested that the appellant stand to be arraigned. Although appellant refused, the court permitted the trial to continue without forcing the issue.

During the jury selection process, appellant told the judge to stop asking him whether each juror was acceptable to him. There ensued an interruption in which the appellant argued with the court concerning his desire to be tried without a jury. The court agreed to stop asking the appellant about the acceptability of each juror, but warned the appellant not to cause any further disturbances so that the trial could proceed. Then defense counsel informed the court that her client had instructed her not to participate in any way in the jury selection. This presented a procedural issue and the Commonwealth requested that this instruction by appellant to his counsel be put on the record personally by him so as to avoid possible error for appeal. However, appellant, consistent with his practice of being totally contrary, refused to state for the record his instructions to counsel, saying repeatedly, "I have nothing to say". Accordingly, the Commonwealth requested that the court proceed as before. When the court recessed for lunch, the appellant was given permission to call his private attorney. After the recess, appellant alleged that the Commonwealth's chief witness, a police officer, pushed him in front of the veniremen. The court called to the bench the officer and a court

sheriff to question all involved. A witness to the alleged "push" stated that he saw the appellant "pull a faker", acting like he was hit when he passed the officer in the hall. The court accepted this version of the occurrence and dismissed the officer. Again, at the end of the day, the court gave the appellant permission to call his attorney on the following court day.

At the conclusion of the Commonwealth's case, defense counsel noted for the record that the appellant had instructed her not to present an opening or closing statement, not to conduct cross-examination and not to make objections to the prosecutor's questions. The court indicated its understanding of counsel's situation and noted for the record that the appellant had repeatedly attempted to make a mockery of the trial and to prevent the completion of the trial, but that the court made every effort to conduct a fair trial. The appellant interrupted the court, charging that the court was unfair. He was told to be quiet and sit down. Appellant refused and the court indicated it would take appropriate action if appellant caused any more delay. Appellant translated this into a threat by the court to have him "beat up". The court reiterated that it had gone far beyond its duty to help appellant and would continue to do so, despite appellant's arrogant and insulting behavior.

As a general pattern, it can be said that appellant was totally contrary: when asked to stand, he sat, when asked to sit down and be quiet so the proceeding could continue, he persisted in arguing with the judge, when asked to state something for the record that he had conveyed through his attorney, he refused.

At the beginning of trial the next day, appellant refused to rise when the court crier opened court, and he turned his back to the court after being warned that he would be required to stand or be held in contempt. The jury was removed from the courtroom. After repeated interruptions by appellant, the court finally held him in contempt of court. At this point, he was simply incorrigible and refused to remain quiet. When he finally was quiet and sat down he

sat facing away from the court. Eventually he was ordered shackled so that he would face the proceeding. The jury was brought back in and the trial continued.

I. Appellant first argues that the trial court improperly held him in contempt for refusing to stand on the opening of court. As appellant states the case, it is as though this was the sole incident giving rise to the exercise of the summary contempt power. To the contrary, the refusal to stand was only the last in a series of tactics employed by the appellant to disrupt and delay the proceedings.

Subsection III requires proof beyond a reasonable doubt of (1) misconduct, (2) in the presence of the court, (3) committed with intent to obstruct the proceedings, which (4) obstructs the administration of justice. *Commonwealth v. Garrison*, 478 Pa. 356, 371, 386 A.2d 971, 979 (1978). Appellant's conduct clearly violated subsection (3) of the Penal Contempt Statute. In *Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855 (1976), we recognized the power of the court to summarily hold in contempt those parties whose actions are calculated to belittle the system. The actions of appellant herein were designed to make a mockery of the proceeding. The dramatics of his tactics are most pointedly evidenced by ripping his civilian clothes off in court. The defiance inherent in this action underlay the entire proceeding. While the law of contempt never commands a party to exhibit fawning respect for the court and the proceedings, it is abundantly clear that the standard of conduct demanded was not met by the appellant for in every instance that it could be said he asserted a legitimate right or request, it can be noted that such request was either ill-timed or arbitrary or accusatory or such a distorted version of what was occurring in the proceeding that the logical conclusion to be drawn from his actions is that these were not sincere requests but disruptive tactics.

II. Appellant next argues that he was denied due process when he was not given an opportunity to make a statement in his defense or in mitigation of the contempt finding before sentence was imposed.

However the record reveals that the trial court offered the appellant an opportunity to speak in his own behalf but he chose only to blurt the same unruly assertions that resulted in the contempt citation. He chose not to speak in mitigation; rather he chose to speak in aggravation. The argument is devoid of merit.

III. Appellant next contends that because the trial court asked his defense counsel questions concerning whether she had informed appellant, as instructed by the trial court, that the court expected him to rise upon the opening of court that counsel was cast in the role of adverse witness and, therefore, appellant was denied his right to counsel as required by *Commonwealth v. Crawford*, 466 Pa. 269, 352 A.2d 52 (1976). The record reveals that the court merely asked counsel whether she had carried out its instructions. The question that followed, whether counsel observed that appellant did not stand and that he turned his back to the court, did not inquire into facts that were in issue. The fact that appellant did not stand and turned his back to the court had already been observed directly by the court. Under these circumstances, we find appellant's argument to be without merit.

Furthermore, to accept the argument appellant now advances would give rise to a ludicrous result. Throughout the proceedings, he specifically instructed counsel not to make any effort on his behalf, not to present opening or closing statements, and not to cross-examine witnesses. It was also throughout the same proceedings, while represented by counsel, that appellant followed his chosen course of disruptive conduct, as earlier outlined, the aggregate of which eventually gave rise to a finding of contempt by the lower court.

IV. Lastly, appellant alleges that the trial judge should have recused himself from the proceedings as he had ceased to exercise a proper degree of judicial restraint.

A judge before whom the contumacious conduct has occurred has the power to immediately vindicate the author-

ity of the court and punish the offender without recusing himself. *Commonwealth v. Stevenson,* 482 Pa. 76, 393 A.2d 386, (1978), *Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973). The record does not reveal the type of "running, bitter controversy" wherein *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) would require recusal of the judge. Furthermore, we have held in *Commonwealth v. Africa, supra,* that even where the judge has been personally attacked, the exercise of the summary contempt proceeding without recusal is proper due to the necessity of the judge to immediately vindicate the authority of the court.

■ Here, while appellant charged that the judge was "unfair" and "prejudiced", he did not levy any personal attack on the court nor was there an ongoing, bitter controversy between the two. Accordingly, appellant's argument is without merit and the judgment of the lower court is affirmed.

Judgment of sentence affirmed.

NIX, J., concurs in the result.