### In Re: Special Investigating Grand Jury of April 26, 1984

David F. Michelman, assistant district attorney, for the Commonwealth.

Howell K. Rosenberg, for defendants.

DiNUBILE, JR., J., March 14, 1986—This is an appeal from a citation of direct civil contempt of court for failure of three appellants herein to comply with the dictates of a subpoena to appear before the above-mentioned special investigating grand jury presently in session in Philadelphia County and due to expire April 25, 1986. The contempt arises from the denial of appellants' petition to quash their respective subpoenas and approve an accompanying protective order. Since appellants have refused to honor the provisions of the subpoenas (after the issuance of the court's order denying their relief), they have been held in contempt of court. Appellant Nellinger was served with a subpoena to appear before the special investigating grand jury on February 19, 1986. Appellants Joseph and James Marianni were subpoenaed to appear on February 18, 1986. All three subpoenas were issued pursuant to an ongoing investigation conducted by the District Attorney's Office of Philadelphia concerning patterns of corruption involving employees of the Streets Department of Philadelphia. In particular, this investigation focuses on certain individuals who may have paid bribes to city employees of the

streets department in connection with the dumping of trash at city facilities. The alleged payments were made by private haulers to city employees to induce them to misrepresent the actual weights of the amount of trash dumped, thereby reducing the amount of money charged by the city to these haulers. It appears (from the arguments made before this court below) that appellants may be haulers who are targets of the particular investigation in question. In response to these subpoenas, counsel for appellants notified the district attorney that his clients would assert their Fifth and Fourteenth Amendment privileges against self-incrimination if called to testify. The assistant district attorney in charge of the investigation then prepared, filed and served Hawthorne affidavits. In them, inter alia, was contained a demand that appellants' photographs be taken to be used as part of the ongoing investigation. There also was a demand that appellant James M. Marianni provide the district attorney with a handwriting sample. If appellants complied, the assistant district attorney indicated that they would not even have to appear before the grand jury to assert their privilege against self-incrimination. Motions to quash these subpoenas as well as accompanying protective orders were filed and various hearings held. All motions were denied by March 12, 1986, and this court ordered that photographs be taken and a handwriting sample be furnished in accordance with the district attorney's request. Counsel then asserted that his clients would not comply with the court's order. The court then held all three appellants in direct civil contempt of court. 42 Pa.C.S. §4131, see also Commonwealth v. Maurizio, 496 Pa. 584, 437 A.2d 1195 (1981). It further ordered them to undergo incarceration commencing March 14, 1986 and ending at the date of

the termination of the present investigating grand jury on April 25, 1986. In accordance with the rules pertaining to a direct civil contempt, the contemners could purge themselves immediately by complying with this court's directive. The court made it abundantly clear that the sole purpose of its citation was to coerce compliance. See Commonwealth v. Cameron, 501 Pa. 572, 462 A.2d 649 (1983). This appeal follows.

Appellants argue that the present Investigating Grand Jury Act of 1978 does not grant the district attorney the power to compel witnesses to submit to the taking of their photograph or providing a handwriting exemplar. Appellants concede that no Fifth or Fourteenth Amendment right against self-incrimination can be asserted. Their sole argument is predicated upon the lack of authority contained in the act itself. A reading of the Grand Jury Act clearly leads to an opposite conclusion:

"Powers of investigating grand jury

The investigating grand jury shall have the power to inquire into offenses against the criminal laws of the Commonwealth alleged to have been committed within the county or counties in which it is summoned. Such power shall include the investigative resources of the grand jury which shall include but not be limited to the power of subpoena, . . ." 42 Pa.C.S. §4548(a)

"Counsel for witnesses.

A witness subpoenaed to appear and testify before an investigating grand jury or to produce documents, records or other evidence before an investigating grand jury shall be entitled to the assistance of counsel, . . ." 42 Pa.C.S. §4549(c)(1)

"Investigative resources of the grand jury

The power to compel the attendance of investigating witnesses; the power to compel the testimony of

investigating witnesses under oath; the power to take investigating testimony from witnesses who have been granted immunity; the power to require the production of documents, records and other evidence; . . ." 42 Pa.C.S. §4542

It can be seen from a reading of these excerpts from the act that broad subpoena power is vested in the investigating authority. The rationale is apparent. Without such authority, how could a prosecutor effectively investigate and ferret out crime? To follow the narrow construction that appellants desire would have a chilling effect on any and all types of investigation. It would defeat the very purpose of the act. Appellants' argument that the submission of a photograph and the compelling of a handwriting sample is not within the authority of the act is in direct contradiction to all existing authority. Judge Savitt, Pennsylvania Grand Jury Practice, §21.04(A)(3) at p. 92-93, §21.04(C)(3) at p. 96 (1983).

Appellants further argue that the prosecutor cannot subpoena nor compel a witness to "create or manufacture" evidence. This assertion is fallacious. Following this argument to its logical conclusion would mean that all testimony would be barred and the investigating authority could call no witnesses. Cannot any witness's oral testimony before an Investigating Grand Jury be considered the "creation of evidence?" How does a witness's recorded oral testimony differ from the production of a handwriting sample and the taking of a photograph? Do they not all, to some extent, involve the creation of evidence? Appellants conceded that a subpoena duces tecum for the production of their photographs or handwriting sample could have been issued validly. How then is it illegal and improper to require them

to do so at the time they are called to testify? Such an argument lacks consistency.

Petitioners finally argue that they would have been entitled to a protective order permitting their counsel to be present within the grand jury whenever their photos would have been exhibited to prospective witnesses. They assert that their right to counsel would be violated whenever their photographs were to be used by the assistant district attorney in attempting to have them identified by prospective witnesses as the culprits involved. Their analogy is based on the right to counsel at lineups. The analogy is clearly without merit. We are dealing here with petitioners who, at best are mere targets of an investigation. They have not been arrested nor is any presentment imminent. See Commonwealth v. Harvey, 231 Pa. Super. 86, 331 A.2d 915 (1974); Commonwealth v. Fergurson, 327 Pa. 305, 475 A.2d 810 (1984). In addition, to permit counsel for the petitioners to be present during testimony of other witnesses would violate the provisions of the Investigating Grand Jury Act, which permits only the attorneys for the witnesses actually testifying to be inside during sessions of the Grand Jury. 42 Pa.C.S. §4549(c), Pa.R.C.P. 264. Finally, appellants have an adequate remedy in the event that a presentment is issued against them and they are arrested. Appellants then can file a pretrial motion to suppress the identification. At that hearing, not only would appellants be furnished with the grand jury testimony before which the witnesses identified them (see Rule 263 Pa. Rules of Criminal Procedure (b) and (c)), but they also would be entitled to all other discovery concerning the process of identification.

In view of the foregoing, the court's order of direct civil contempt was fair and proper under the cir-

cumstances. The incarceration does not last any longer than the existence of the grand jury (some six weeks). It further permits immediate release upon compliance with the court's order. It also must be noted that to allow bail pending appeal would defeat the whole purpose of the trial court's order. The full two-year period of this grand jury is due to expire in about six weeks. This appeal could not be finalized in that short time period. Consequently, the granting of bail pending appeal would have the effect of circumventing this court's order.