**COMMONWEALTH of Pennsylvania**

v.

**Barry William JONES.**

**Appeal of Douglas W. FERGUSON, Esquire and Mark D. Waitlevertch, Esquire, District Attorney of Crawford County, Pennsylvania.**

Superior Court of Pennsylvania.

Submitted July 28, 1997.

Filed Sept. 23, 1997.

Debra S. Higgins, Asst. Dist. Atty., Meadville, for appellants.

Before JOHNSON, HUDOCK and SAYLOR, JJ.

JOHNSON, Judge:

■ Crawford County Assistant District Attorney Douglas W. Ferguson appeals from the order dated November 14, 1996 which imposed a $200 fine for direct criminal contempt. Because the record is not sufficient to establish an obstruction of justice we reverse. Crawford County District Attorney Mark D. Waitlevertch appeals from the same order under Pa.R.A.P. 501. Because District Attorney Waitlevertch was not a party to the proceeding in the trial court and has not demonstrated that he has a direct, immediate, and substantial interest in this matter, his portion of the appeal is quashed. *See*

*Commonwealth* v. *Martorano*, 387 Pa.Super. 79, 85 n. 1, 563 A.2d 1193, 1196 n. 1 (1989).

The contempt order was entered after a series of statements Ferguson made during the course of a criminal trial. The statement which precipitated the contempt citation occurred during the cross-examination of a prosecution witness:

> BY MR. HUNDERTMARK: After a year, it's not remarkable enough for you to recall. Do you recall Hope Nevison making any comments about being physically attacked in the bathroom while you were sitting in the living-room?
>
> A. Yes.
>
> Q. What do you recall now?
>
> A. I remember she told me.
>
> Q. Not what she told you.
>
> MR. FERGUSON: You asked the question, Mr. Hundertmark.
>
> THE COURT: Wait. We're going into chambers with the Court Reporter a second.

N.T. filed Dec. 13, 1996, at 71–72. Once in the judge's chambers, the trial court summarily fined Ferguson for contempt. N.T. filed Dec. 6, 1996, at 2–3.

The court refused Ferguson's request for a contempt hearing, explaining: "I have entered the Order. It's in court. It was in front of the Judge. And you have got a record." *Id.* at 3. He added:

> "We have been through this for seven years. The courtroom has become a zoo by reason of the conduct of the lawyers. You're not the only one. But I have warned you many times before and I warned you less than five minutes prior to that. You know how to try a case. You know how to try a case. And if you have an objection, you make it and I'll rule. But you're not going to blurt out to Mr. Hundertmark."

*Id.* at 4. The court then sustained Ferguson's objection. *Id.* at 5.

The objectionable statement followed closely an exchange during which Ferguson was admonished not to address objections or other comments to opposing counsel. This

exchange occurred during cross-examination of the same witness:

BY MR. HUNDERTMARK: Now after the phone came flying by and Barry disabled the phone in the living room, what happened next?

A. He came out with the gun.

MR. FERGUSON: Let her finish.

THE COURT: Please don't talk to each other. If there is an objection, Mr. Ferguson, you say objection.

MR. HUNDERTMARK: I apologize, your Honor.

MR. FERGUSON: I don't have an objection. I have no objection, your Honor. Thank you.

THE COURT: But wait a minute. You do not talk to Mr. Hundertmark. You know how to try a case.

MR. FERGUSON: I understand. I have no objection.

THE COURT: If you want to say something, you object.

MR. FERGUSON: I have no objection, your Honor.

THE COURT: I understand that. But you might remember what I said. Don't talk to Mr. Hundertmark. Mr. Hundertmark, sorry. Keep going.

N.T. filed Dec. 13, 1996, at 67–68.

Earlier in the proceedings, Ferguson was remonstrated for directing to his witness and the jury his own explanation of a defense objection. These comments prompted a clarification by the court. The relevant portion of the transcript reads:

BY MR. FERGUSON: And did the doctor do a physical exam of the child?

A. The doctor said it wouldn't—

MR. HUNDERTMARK: I'm going to object.

MR. FERGUSON: You can't tell us what the doctor said. They don't want you to hear that.

MR. HUNDERTMARK: Excuse me?

THE COURT: It may be hearsay.

MR. FERGUSON: Okay.

MR. HUNDERTMARK: I guess I'm going to ask the court to instruct the jury I would be glad to have them hear it.

THE COURT: Sit down. All we have to do is object and say your legal reasons. No editorializing. If you want to talk in front of the jury I'm not going to let you. You're going to do it up here at side bar. I'm going to sustain the objection.

It's not a case, members of the jury, of the defendant not wanting you to hear something. It appears to be an out-of-court statement which is hearsay. And that's not admissible.

So, Mr. Ferguson, your comments were out of order also.

*Id.* at 7–8.

Ferguson contends on appeal that: (1) the record is insufficient to establish guilt beyond a reasonable doubt; (2) the court improperly denied him a contempt hearing; (3) the court failed to safeguard his right to counsel; and (4) the court erred in failing to recuse itself from the contempt proceeding.

 When reviewing a contempt conviction, this Court places great reliance on the trial court's discretion. "Each court is the exclusive judge of contempts against its process, and the court's actions will be reversed on appeal only when a plain abuse of discretion occurs." *Ricci v. Geary,* 447 Pa.Super. 609, 612–13, 670 A.2d 190, 191 (1996) (citation and quotation marks omitted). Accordingly, appellate review is confined to a determination of whether the facts support the trial court's decision. *In re Adams,* 435 Pa.Super. 202, 206, 645 A.2d 269, 272 (1994).

 Ferguson first contends the record discloses insufficient facts upon which to base a finding of direct criminal contempt. To sustain a criminal contempt conviction, under 42 Pa.C.S. § 4132(3), proof beyond a reasonable doubt of the following elements must be present: (1) misconduct; (2) in the presence of the court; (3) committed with intent to obstruct the proceedings; (4) which obstructs the administration of justice. *Behr v. Behr,* —— Pa. ——, ——, 695 A.2d 776, 779 (1997).

 Ferguson first challenges the trial court's assessment that he engaged in misconduct. Misconduct may consist of behavior inappropriate to the role of the actor calculated to hinder the judicial process. *Adams, supra,* at 207, 645 A.2d at 272 (misconduct established by attorney making faces and gesturing in presence of jury in reaction to prosecutor's questions and prosecution witness' answers). "[P]ersistent, vociferous, contentious, and imposing" advocacy of a client's position, when done with due regard to the dignity of the judicial process, is not punishable by contempt, nor is conduct that merely offends the court. *Commonwealth v. Collier,* 353 Pa.Super. 543, 548–49, 510 A.2d 796, 798 (1986) (citations omitted).

 Ferguson asserts that he was punished for "making an objection" which was "not inappropriate and was not calculated to hinder the judicial process." Appellant's Brief, at 9. We disagree with this characterization. Assistant District Attorney Ferguson interrupted the cross-examination of the victim, not by means of a proper objection, but by directly admonishing defense counsel that he had already asked the question. Ferguson correctly observes, and the trial court ultimately agreed, that defense counsel's question was objectionable. This case, however, is not about the propriety of Ferguson's objection. It concerns an attorney's failure to observe his role in maintaining courtroom order. As the late Justice McDermott stated, "When one is permitted to make statements . . . not permitted by the rules, all present lose their commitment to the need for quiet and order." *Commonwealth v. Cameron,* 501 Pa. 572, 580, 462 A.2d 649, 653 (1983) (dissenting opinion). Ferguson was reminded twice to direct his comments to the bench, yet he persisted in his course. This was misconduct.

Ferguson next argues that, notwithstanding the nature of his act, the record does not reflect that it was done with intent to hinder the judicial process. Ferguson, as a trial attorney, reasonably should have known, after being warned by the court, that his failure to direct any comments in the presence of the jury to the judge was wrongful. *In re Adams, supra,* at 207, 645 A.2d at 272.

Moreover, Ferguson knew that his earlier misdirected comments had caused some interruption as the court endeavored to prevent any harmful influence on the jury from this disorder and to prevent its reoccurrence by admonishing him. These facts are sufficient to establish intent. *Id.*

Ferguson's final challenge to the evidence against him is that the disruption caused by his remarks did not constitute an obstruction of justice. We agree.

 Obstruction of justice is narrowly defined in Pennsylvania, being satisfied only by *significant* disruptions of orderly judicial process. *Behr, · supra; Williams v. Williams,* 452 Pa.Super. 52, 57, 681 A.2d 181, 183 (1996). A significant disruption has been defined as one posing "actual, imminent prejudice to a fair proceeding or to preservation of the court's authority. . . . This danger must not be remote or even probable; it must immediately imperil." *Commonwealth v. Garrison,* 478 Pa. 356, 372, 386 A.2d 971, 979 (1978)(plurality). We conclude that Ferguson's conduct posed no such imminent danger.

In *Williams,* an attorney responded to a court's evidentiary ruling with a profane remark concerning the judge which was overheard by opposing counsel and the court reporter. *Williams, supra,* at 54, 681 A.2d at 182. To confirm the content of the defendant's statement, the judge conducted a summary hearing involving the testimony of two witnesses and occupying three and a half pages of the trial transcript. *Id.* This Court viewed such an interruption as a "momentary break" amounting to a "transient delay", not an obstruction of justice. *Id.* at 57, 681 A.2d at 183.

 The delay in this case caused by the in-chambers contempt hearing does not appear to differ significantly in duration from that in *Williams.* The in-chambers discussion of Ferguson's behavior occupies only one and a half pages of transcript. N.T. filed Dec. 6, 1996, at 3–4. This was followed by a discussion of the substance of Ferguson's objection, an exchange which would still have occurred had Ferguson prefaced his comment with "objection" rather than "Mr. Hun-

dertmark". The prior statements referred to in the trial court's Opinion involved more brief, N.T. filed Dec. 13, 1996, at 7–8, 67–68, and almost non-existent interruptions. *Id.* at 21–22, 29. Unlike the remark in *Williams,* Ferguson's comment was not gratuitous or patently inappropriate. Rather, the record discloses that it was a well-founded objection improperly directed.

The magnitude of the interference engendered by Ferguson's statements are in clear contrast with the facts of *In re Adams, supra,* relied on by the court in its Rule 1925 Opinion. In *Adams,* a defense attorney ("Adams") repeatedly "carr[ied] on" in the courtroom and during an in-chambers examination of a prosecution witness. *Adams, supra,* at 205, 645 A.2d at 271. Adams expressed agitation, shaking his head in an exaggerated manner and gesturing to indicate disapproval of a prosecutor's questions and a witness' testimony. *Id.* Twice the judge held sidebar conferences to reprimand him, and the judge cleared his chambers during a hearing to privately discuss Adams' behavior. *Id.* Later, when Adams refused to stop questioning a witness, raising his voice as the judge twice attempted to interject, the court removed the jury from the courtroom to bring him in line. *Id.* The next day Adams continued "making faces in front of the jury" and was found in contempt. *Id.*

This Court agreed that Adams' conduct had obstructed justice because it "forc[ed] the jury and the trial judge to focus on his histrionics rather than on the issues of the case." *Id.* at 208, 645 A.2d at 272. Ferguson's comments did not cause the amount of interruption reflected in the facts of *Adams* and did not pose a similar risk of distorting the truth-seeking function of the trial. When viewed in context, Ferguson's interjection properly prevented an improper question without unduly prolonging the trial.

"The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the

courtroom may be in jeopardy." *Commonwealth v. Martorano,* 387 Pa.Super. at 93, 563 A.2d at 1200. These words, undoubtedly true, were uttered in consideration of an attorney's courtroom behavior which, this Court admitted, was "less reprehensible than [other] cases which upheld the existence of contemptuous behavior...." *Id.* In *Martorano,* a prosecutor openly and continually challenged the court's rulings and its impartiality. We observed that the court's continual "battling" with the prosecutor frequently "halted the proceedings" and "stripped the court of its dignity and control." *Id.* The prosecutor's behavior was "outwardly abusive" and "constituted an intentional and flagrant challenge to Judge Ribner's authority which was undoubtedly designed to intimidate the Judge into indulging [the prosecutor's] desires." *Id.* The record does not reflect that Ferguson's comment posed a similar threat to the dignity of the court or the judge's authority. *See Commonwealth v. Falana,* —— Pa. ——, 696 A.2d 126 (1997)(threatening victim while leaving sentencing hearing "would clearly obstruct ... justice and demean the court's authority" because others might be deterred from testifying).

 Without questioning the inherent contempt powers of the trial court, we observe that a court should not wield the criminal contempt sanction when less drastic measures will suffice. *See Commonwealth v. Garrison,* 478 Pa. 356, 366, 386 A.2d 971, 976 (1978) *(plurality). We note that the trial court expressly* disavows consideration of Ferguson's conduct in prior matters before the court. Trial Court Opinion, Jan. 3, 1997, at 11–12. In fact, these matters are not of record and cannot be considered in evaluating this exercise of the trial court's discretion. *Commonwealth v. Africa,* 466 Pa. 603, 625, 353 A.2d 855, 866 (1976). In its opinion, however, the court proceeds to explain its decision to cite Ferguson by reference to the conduct of lawyers appearing before it and, specifically, describing Ferguson's behavior in prior cases as "the worst we have seen" in thirty years at the Bar. Trial Court Opinion, Jan. 3, 1997, at 11–12. Further, the court justified its action by twice relating that it had previously warned Ferguson that his conduct before the court might provoke a

contempt sanction. *Id.* at 11–13. No such warning appears in the transcript. In ordering Ferguson fined for direct criminal contempt, on these facts, the court plainly abused its discretion. *See Behr, supra* (presence of litigants' file box with word "death" on lid discovery of which prompted court to reconvene to inquire as to its meaning did not significantly disrupt proceedings); *Cameron, supra* (defendant twice refusing to stand when judge entered courtroom and defying judge during recesses did not obstruct justice); *Matter of Campolongo,* 495 Pa. 627, 435 A.2d 581 (1981)(rhetorical, argumentative question supplementing prosecutor's objection which prompted judge to clear courtroom did not obstruct justice); *In re Cogan,* 485 Pa. 273, 401 A.2d 1142 (1979)(attorney's repeated, stubborn attempts to state reason for objection despite order by court to move on did not obstruct justice); *Matter of Johnson,* 467 Pa. 552, 359 A.2d 739 (1976)(defense attorney's improper remarks during closing argument which required judge to stop twice and give instructions did not obstruct justice); *Williams, supra* (profanity directed at judge following ruling did not obstruct justice). *Cf. Falana, supra; Commonwealth v. Owens,* 496 Pa. 16, 436 A.2d 129 (1981)(defendant who continually disrupted his counsel's closing argument and struggled with sheriff in court obstructed justice); *Adams, supra* (defense counsel's exaggerated expressions and gestures during prosecution witness' testimony obstructed justice); *Martorano, supra* (pattern of confrontation with judge and accusations of bias by prosecutor obstructed justice); *Commonwealth v. Falkenhan,* 306 Pa.Super. 330, 452 A.2d 750 (1982)(attorney's refusal to be seated at counsel table and allow hearing to commence and instructions to client to ignore questioning of court obstructed justice).

Our resolution of Ferguson's evidentiary challenge makes it unnecessary to consider his further challenge to the procedural aspects of his conviction.

Based upon the foregoing, the contempt order is **REVERSED.** The appeal of District Attorney Mark D. Waitlevertch is **QUASHED.**