452 A.2d 750

**COMMONWEALTH of Pennsylvania**

v.

**Claude V. FALKENHAN, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1982.

Filed Nov. 15, 1982.

Petition for Allowance of Appeal Denied March 18, 1983.

Richard S. Levine, Pittsburgh, for appellant.

Leo M. Stepanian, Assistant District Attorney, Butler, for Commonwealth, appellee.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

SPAETH, Judge:

This appeal is from a judgment of sentence for direct criminal contempt. The sentence was that appellant be committed to the county prison until he paid a fine of $1000.[1] Appellant argues: (1) that the evidence was insufficient to support a conviction of direct criminal contempt; (2) that in imposing summary punishment, the lower court abused its discretion; (3) that the lower court should have recused itself; and (4) that the sentence was manifestly excessive. We are not persuaded by the first three arguments, but we are by the last. We therefore affirm the conviction of direct criminal contempt but vacate the sentence and remand for resentencing.

Appellant is an attorney. On December 8, 1980, he was representing one James D. McDeavitt at a hearing before the lower court. The hearing started as follows:

THE COURT: Very well, this is the time fixed for hearing on the charge that James D. McDeavitt committed an indirect criminal contempt by violating the condi-

---

1. At one time, the Supreme Court had jurisdiction over appeals from final orders in direct criminal contempt cases. 42 Pa.C.S.A. § 722(4). However, jurisdiction is now in the Superior Court. 42 Pa.C.S.A. § 742.

tions of the order of October twenty-seven, nineteen eighty, entered under the Protection from Abuse Act.

You may call your witness.

MR. FOLAN: Thank you, Your Honor. Mr. McDeavitt—

THE COURT: Well, we don't seem to have the defendant in court.

MR. FALKENHAN [appellant]: Right here he is, Your Honor.

THE COURT: He may move up.

MR. FALKENHAN: We decline, Your Honor, thank you.

THE COURT: What is that?

MR. FALKENHAN: I say we decline.

THE COURT: You decline for what reason?

MR. FALKENHAN: Without going on the record of these proceedings, I and James McDeavitt doesn't—the order under which this hearing is called this afternoon is on appeal. The appeal was perfected this morning with the Prothonotary.

THE COURT: We will excuse the children from the courtroom.

MR. FOLAN: Notice of appeal was filed some time ago. I have no reason to believe the supersedeas was granted.

THE COURT: The court—there has been no application for supersedeas. The court has granted no supersedeas. We will excuse the children from the courtroom.

This is totally contemptible, inexcusable, Mr. Falkenhan, to bring those children into this courtroom.

MR. FALKENHAN: As a separate record I will demand that if you—

(Mr. Falkenhan continues to speak at the same time as the court.)

THE COURT: This is totally incomprehensible to this court, and I want that noted on the record. The defendant James D. McDeavitt will be seated at the counsel

table. Let the record show that Attorney Falkenhan—Sit down. Sit down, Mr. Falkenhan.

MR. FALKENHAN: No, I will not, Your Honor, respectfully. I have my client's liberty to defend. He does not and I as counsel do not participate in these proceedings. You may do what you will, but if he moves forward to the bar it is under the force and compulsion of the law, physical force. And when he does, he does because you drag him and not because he participates in these proceedings.

THE COURT: Let the record show that Attorney Falkenhan has directed his client not to appear at the bar of this court as a participant in these proceedings.

Very well, gentlemen, place Mr. McDeavitt at the counsel table.

All right, Mr. Falkenhan, there will be no comments from you aside during this hearing. If you have remarks, you will address them to the court.

MR. FALKENHAN: I assure the court if I have remarks intended to address the court I will do so, Your Honor.

THE COURT: You will not from the position you are in now. You will be silent throughout the entire proceeding.

Mr. McDeavitt, are you represented by counsel?

Mr. Falkenhan, I told you to be quite [*sic*].

MR. FALKENHAN: I will defend the liberty of my client. And I will instruct him from here and I will not move forward to the bar of your court lest that implicate voluntary participation in this action. I have the liberty of my client to defend, and I will do so, Your Honor.

THE COURT: I told you you were not to address the court from that position. You will come to the bar of the court.

MR. FALKENHAN: Say nothing at all, ever, Jim.

THE COURT: Did you record that remark?

COURT REPORTER: Yes.

THE COURT: Be seated.

N.T. 1–6.

The hearing continued in this fashion. Finally, the following occurred:

THE COURT: If you wish to—if you wish to represent Mr. McDeavitt in this hearing today you will be seated at counsel table.

MR. FALKENHAN: No, I don't, he and I are not participants. I represent Mr. McDeavitt in this action and my representation of this advice I give to him in this action is that he should not participate in the hearing called this afternoon in this court in this action.

THE COURT: Very well, then, we will excuse you from the court room.

MR. FALKENHAN: Thank you.

THE COURT: Mr. McDeavitt, this is a criminal proceeding. You have a right to be represented by counsel. If you are without counsel and without funds to employ counsel, upon application to the court, the court will appoint an attorney to represent you in these proceedings.

MR. FALKENHAN: I instruct you—(Mr. Falkenhan continues to speak at the same time as the court.)

THE COURT: I have excused you from the court room, Mr. Falkenhan.

MR. FALKENHAN: I instruct my client—

THE COURT: You will leave the court room, Mr. Falkenhan. You will be taken into custody.

MR. FALKENHAN: I instruct you not to answer any question and to assent to any question asked to you that it could be a violation—

THE COURT: The court finds Claude V. Falkenhan in contempt of this court. Take him into custody in the courtroom here until the court determines what to do with him.

N.T. 12–13.

The court then took a recess. Immediately before recessing, the court advised Mr. McDeavitt of his right to be represented by an attorney, and told him that if he could not

afford an attorney, the court would appoint one. When the court asked Mr. McDeavitt whether he understood, Mr. McDeavitt refused to answer.

After the recess, the following occurred:

THE COURT: Now you can proceed.

MR. FALKENHAN: I believe Your Honor had asked a question.

THE COURT: Do you wish to make a statement before sentence is imposed?

MR. FALKENHAN: Yes, I do. My first statement is sentence will be highly improper, in error at this time. My second is that if you charge me with anything I demand a full and complete statement of what it is you charge me with. My third is that I demand adequate time to prepare my defense. My fourth is that I demand my liberty in the meantime.

And I remind you in the order of court as spoken of in the judicial code section I think you have before me—or before you—I remind you that you must demonstrate that I had in fact interfered with the process of court if you even intend to charge me with summary criminal contempt. But I demand of you what it is—I demand through my advice and participation in counseling Jim McDeavitt this afternoon a statement of the charges against me, those and the opportunity to be heard. And I demand a jury trial of my peers because you have criminal contempt in mind. I can only—or at least I am entitled to suspect that because it carries the weightier penalties—until you tell me what it is in fact you charge me with. I remind you also that I remain entitled to bail if you impose any sentence and punishment.

And I demand that, and more generally I demand all of what you know in your capacity as judge to be the criminal procedural rights, the criminal procedural rights in any charge against me and of every United States citizen and every Pennsylvania citizen.

THE COURT: The record speaks for itself, Mr. Falkenhan. Your conduct in the court this afternoon has been

contemptuous. You have interfered with the process of the court. You have instructed your client to sit in the courtroom but not take his position at the bar of the court. You continued to conduct conversations with your client and others in the courtroom. You have interrupted the court. The record, the entire record speaks for itself.

The sentence of court is that you pay a fine of one thousand dollars for the use of the Commonwealth of Pennsylvania. You are committed to the Butler County Prison until such time as the fine has been paid.

MR. FALKENHAN: I demand to know how—

THE COURT: At such time as the fine is paid you will be discharged.

MR. FALKENHAN: I will pay you no fine because if I pay your fine I alleviate my demand. Instead I demand to know what amount of bail will secure my liberty. I remind you that I have the right to bail, and I remind you that if you attempt to deny bail you must state on the record your reasons for denying me bail. I demand to know my bail.

THE COURT: The court fixes bail in this matter at one thousand dollars.

MR. FALKENHAN: Thank you, Your Honor.

N.T. 14–16.

The court then again advised Mr. McDeavitt of his right to be represented by counsel. Mr. McDeavitt again refused to answer whether he understood. The court then heard testimony from Mr. McDeavitt's wife, Gail E. McDeavitt, to the effect that despite an order by the lower court, Mr. McDeavitt had not refrained from physically abusing or threatening her. When asked whether he wished to cross-examine his wife, and later, whether he wished to argue to the court, Mr. McDeavitt refused to answer. The court found Mr. McDeavitt in contempt, and imposed sentence and entered various other orders, the substance of which need not be stated here as they are not before us.

–1–

"Direct criminal contempt consists of misconduct in the presence of the court or misconduct so near thereto as to interfere with the immediate business of the court or disobedience to the lawful process of the court. *Commonwealth v. Marcone,* 487 Pa. 572, 579, 410 A.2d 759, 762–63 (1980)." *In the Matter of Campolongo,* 495 Pa. 627, 631 n. 4, 435 A.2d 581, 583 n. 4 (1981). "The . . . purpose of imposing summary punishment for criminal contempt . . . is the vindication of the dignity and authority of the court and the protection of the interests of the general public." *In the Matter of Campolongo, supra* 495 Pa. at 631, 435 A.2d at 583.

Although the law has long recognized the inherent power of the courts to impose summary punishment for contemptuous misconduct, that power has been limited in this Commonwealth by Section 4131 of the Judicial Code:
§ 4131. Classification of penal contempts

The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

*Id.* 495 Pa. at 631–32, 435 A.2d at 583 (footnotes omitted).

█ Although the lower court did not say so in so many words, it is evident that the court regarded appellant's conduct as misbehavior in the presence of the court, obstructing the administration of justice.[2] Accordingly, to be sufficient to support appellant's conviction, the evidence had

2. In *In the Matter of Campolongo, supra,* the Supreme Court noted that the weight of authority is that an attorney is not an officer of the court within subsection 1 of Section 4131 of the Judicial Code. *Id.* 495 Pa. at 632 n. 7, 435 A.2d at 583 n. 7.

to show, beyond a reasonable doubt, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), appellant's misconduct in the presence of the court; his intent to obstruct the administration of justice; and actual obstruction. *Commonwealth v. Reid,* 494 Pa. 201, 431 A.2d 218 (1981).

■ Appellant argues that the evidence was insufficient to show his intent to obstruct the administration of justice because it did not show that he had "tactically planned" his conduct. Brief for Appellant at 17. In appellant's view, his conduct was nothing more than "zealous advocacy on behalf of his client." Brief for Appellant at 11. This argument misconceives the sort of intent that had to be proved.

In *Commonwealth v. Owens,* 496 Pa. 16, 436 A.2d 129 (1981), the Court said:

[A] subjective intent to obstruct the administration of justice is not a requisite element of criminal contempt. *See, e.g., Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976) (plurality). The requisite element of intent is satisfied if the contemnor had the intent to obstruct the proceedings. When that intent manifests itself in misconduct in the presence of the court which . . . in fact obstructs the administration of justice, criminal contempt has been committed.

*Id.,* 496 Pa. at 24, 436 A.2d at 133 (footnote omitted). Here the evidence made plain appellant's intent to obstruct the proceedings. For example, among other statements made to the court was the following:

He [appellant's client, Mr. McDeavitt] does not and I as counsel do not participate in these proceedings. You may do what you will, but if he moves forward to the bar it is under the force and compulsion of the law, physical force. And when he does, he does it because you drag him and not because he participates in these proceedings.

N.T. 4.

It may well be that appellant was acting in good faith in the sense that he was attempting to protect his client. But

that is of no consequence. In *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), the Court said:

[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal. Persons who make private determinations of law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect .... While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply.

*Id.* at 458–59, 95 S.Ct. at 591 (citation and footnote omitted).

■ Appellant also argues that the evidence was insufficient to prove an "actual obstruction" of the administration of justice. This argument has no merit. "[F]or conduct to be an obstruction of the administration of justice, it must interfere with and disrupt the orderly process of a court." *In re Johnson,* 467 Pa. 552, 558, 359 A.2d 739, 742 (1976). Appellant's conduct interrupted and delayed the hearing the lower court had scheduled. From the outset appellant refused to recognize the court's authority, over either his client, Mr. McDeavitt, or himself. While it is true, as appellant notes, that the "proceeding against [appellant's] client did, in fact, proceed to a conclusion," Brief for Appellant at 17, that occurred only after the delay caused by appellant's conduct, and then not in a satisfactory manner, for on appellant's advice, Mr. McDeavitt refused to participate in the hearing, thus depriving the court of the benefits to be realized from a properly conducted adversary proceeding.

Our conclusion that the evidence was sufficient to support appellant's conviction is supported by other cases. *See, e.g., Commonwealth v. Snyder,* 443 Pa. 433, 275 A.2d 312 (1971) (defendant interrupted Commonwealth's closing argument and refused to behave in an orderly manner); *Commonwealth v. Owens, supra* (defendant repeatedly interrupted

proceedings to request new counsel and express dissatisfaction with proceedings). *Cf. In re Johnson, supra* (attorney not in contempt when improper remarks during closing argument did not disrupt or delay trial); *McMillan v. Mountain Laurel Racing Inc.,* 467 Pa. 266, 356 A.2d 742 (1976) (attorney not in contempt for questioning court's ruling on cross-examination where discussion consumed less than one page of transcript).

–2–

■ In imposing summary punishment, the lower court did not abuse its discretion. As said in *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980):

In keeping with the gravity of a criminal contempt, the law has long recognized the need to provide the courts with the power to impose summary punishment for such conduct in appropriate situations . . . . Summary action permits the court to eliminate the traditional steps involved in an adjudication . . . . Although this is a drastic departure from our traditional view of due process, its justification in the punishment of criminal contempt was well stated by Mr. Chief Justice Taft in *Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773 (1925):

We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the "very hallowed place of justice," as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow . . . .

*Id.,* 487 Pa. at 579–80, 410 A.2d at 763 (citations omitted).

–3–

The issue of when recusal is required was considered in *Commonwealth v. Stevenson,* 482 Pa. 76, 393 A.2d 386 (1978) (plurality opinion). After pointing out that summary pro-

ceedings for contempt are permissible—that is, that we tolerate the omission of the usual steps of service of process, formal hearings, argument, and findings—because "the necessities of the administration of justice require such summary dealing . . . [as] a mode of vindicating the majesty of the law, in its active manifestation, against obstruction and outrage to it," *Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), Justice POMEROY said:

> From the same necessity that in a proper case warrants summary punishment for contempt comes also the permissibility of the imposition of sanctions by the judge who heard and saw the misconduct. But when that necessity is absent, the reason for allowing the judge who has been the object of insult to preside over the hearing is also absent. As a constitutional matter, recusal is required when the record reveals a "running, bitter controversy" between the judge and the offender. *Mayberry v. Pennsylvania,* 400 U.S. 455, 465, 91 S.Ct. 499, 505, 27 L.Ed.2d 532, 540 (1971).
>
> *Commonwealth v. Stevenson, supra* 482 Pa. at 91, 393 A.2d at 394.

■ Here, the record does reveal a "running" controversy between the lower court and appellant. In its opinion the lower court states:

> In the past, Attorney Falkenhan has deliberately used the system to subvert orders and avoid local rules promulgated to facilitate the work of the Court. His tactics have annoyed and frustrated both the Court, his opponents and their clients. It is no wonder that there seemed to be unanimous approval by members of the bar of this order adjudicating Mr. Falkenhan in contempt.
>
> Slip op. at 6.

Given this background, it might have been better if the lower court had recused itself. We do not believe, however, that recusal was required, for the record does not show that the controversy between the lower court, although "running," was "bitter." The court did not regard appellant's conduct as directed at it. In its opinion the court states:

"The conduct of Attorney Falkenhan was not directed at this judge personally. There was no personal insult intended." Slip op. at 6. Also, the court bore appellant no ill-will; it recognized that his motive was to serve his client, only condemning—quite properly, as we have discussed—his judgment. Thus the court states:

> I applaud the always vigorous and well-prepared advocacy of Attorney Falkenhan. I deplore some of the tactics he employs. In this particular situation, it became apparent that Attorney Falkenhan planned to attack the constitutionality of the Protection from Abuse statute. Whatever may have been the objectives of his maneuver, his conduct disrupted orderly court procedure.

Slip op. at 7.

Finally, during the hearing appellant was treated fairly. He was held in contempt only after he had refused, either to represent his client by engaging in the hearing, or, if he chose not to represent his client, by remaining silent and not engaging in the hearing. On balance, we conclude that whether to recuse itself was a matter within the lower court's discretion, which it could have resolved either way. *Compare, Commonwealth v. Reid, supra* (recusal not required); *Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973) (recusal not required) *with Commonwealth v. Stevenson, supra* (recusal required where personal insult to judge and no need to proceed summarily) *and Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976) (same).

–4–

While appellant's conviction of direct criminal contempt was proper, the sentence imposed on the conviction must be vacated and the case remanded for resentencing. Although appellant's contempt was a criminal contempt, the lower court imposed the sort of sentence appropriate to a civil contempt. It thereby denied appellant procedural safeguards essential to a criminal proceeding.

As we have discussed above, the purpose of a criminal contempt is to vindicate the dignity and authority of the

court and to protect the interests of the general public. The purpose of a civil contempt, in contrast, is "to enforce compliance with an order of court for the benefit of the party in whose favor the order runs." *Commonwealth v. Marcone, supra* 487 Pa. at 577, 410 A.2d at 762.

■ A consequence of these different purposes is that different sorts of sentences must be imposed. The distinctive feature of a sentence for civil contempt is that it is indeterminate:

> "The contumacious party need not stay in jail for any definite term; he may get out at will. He need only purge himself of his contempt by complying or showing a willingness to comply with the court's order. This is classically expressed in the aphorism that the person imprisoned for civil contempt carries the keys to the jail in his own pocket."
>
> *In re Martorano,* 464 Pa. 66, 79 n. 16, 346 A.2d 22, 28 n. 16 (1975) (quoting Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183 at 237 (1971) (footnote omitted)).

The distinctive feature of a sentence for criminal contempt is that the sentence is "to a determinate term of imprisonment or a fixed fine." *In re Martorano, supra,* 464 Pa. at 80, 346 A.2d at 29. Since the essence of the sentence is not to coerce but to punish, the person sentenced must be "powerless to escape by purging himself of his contempt . . . ." *Id.*

■ Here, it will be recalled, the lower court imposed sentence as follows:

> The sentence of the court is that you pay a fine of one thousand dollars for the use of the Commonwealth of Pennsylvania. You are committed to the Butler County Prison until such time as the fine is paid.
>
> MR. FALKENHAN: I demand to know now—
>
> THE COURT: At such time as the fine is paid you will be discharged.
>
> N.T. 16.

This sentence was not a proper sentence to impose for appellant's criminal contempt. It was, instead, a sentence

for civil contempt; the fine was for the benefit of a party (the Commonwealth); and appellant could by paying the fine be discharged from the county prison—he "carrie[d] the keys to the jail in his own pocket."

There is a further difficulty arising from the lower court's failure to fix a definite term of imprisonment.

"Criminal contempt of court is a crime." *In re Johnson, supra* 467 Pa. at 557, 359 A.2d at 742. As such it may be punished by imprisonment. The Legislature has not, however, specified the maximum permissible term of imprisonment. 42 Pa.C.S.A. § 4132.

One accused of a "serious offense" is entitled to a jury trial. U.S. Const. amend. VI; Pa. Const. art. I, §§ 6, 9. "The decisions of the Supreme Court of the United States have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious and those carrying less are petty crimes.'" *Commonwealth v. Mayberry,* 459 Pa. 91, 98, 327 A.2d 86, 89 (1974) (quoting *Codispoti v. Pennsylvania,* 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974)).

When, as in Pennsylvania, the Legislature has not specified the maximum permissible term of imprisonment,

then in order to determine whether a jury trial is required, a court must consider the sentence actually imposed . . . . If the sentence actually imposed is greater than six months, then the accused must be afforded an opportunity to be tried by jury . . . .

*Commonwealth v. Mayberry, supra* 459 Pa. at 99, 327 A.2d at 90 (citing, *inter alia, Codispoti v. Pennsylvania, supra* ).

Here, the sentence actually imposed might or might not result in appellant being imprisoned for more than six months. The lower court did not determine, and the record does not otherwise disclose, appellant's ability to pay the fine of $1,000 assessed as part of the sentence. As we have discussed, appellant could obtain his discharge from the county prison upon paying the fine. But he would not be discharged until he paid it. If he was unable to pay the fine,

346

therefore, under the terms of the sentence he would be imprisoned indefinitely, which is to say, he would have been denied his constitutional right to a jury trial—this being so quite apart from the impropriety of an indefinite sentence for criminal contempt.

■ Since the case must be remanded for resentencing, one further observation is in order. Appellant having been convicted of a crime, *In re Johnson, supra,* his sentence must be imposed as required, not only by *Commonwealth v. Mayberry, supra,* but also, by the Sentencing Code, 42 Pa.C.S. § 9701 *et seq. See generally, Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Wicks,* 265 Pa.Super. 305, 401 A.2d 1223 (1979) (collecting cases). *See also Commonwealth v. Young,* 299 Pa.Superior Ct. 488, 445 A.2d 1235 (1982); *Commonwealth v. Doyle,* 275 Pa.Superior Ct. 373, 418 A.2d 1336 (1979). If the lower court determines that a fine should be assessed, the court must determine, among other matters, appellant's ability to pay the fine and the burden that payment will impose. 42 Pa.C.S. § 9726.

The conviction of appellant of direct criminal contempt is affirmed. The judgment of sentence is vacated and the case is remanded for resentencing consistent with this opinion. We do not retain jurisdiction.