563 A.2d 1193

COMMONWEALTH of Pennsylvania

v.

Raymond MARTORANO and Albert Daidone.

Appeal of Barbara L. CHRISTIE, Assistant District Attorney, and Edward G. Rendell, District Attorney.

Superior Court of Pennsylvania.

Submitted April 10, 1989.

Filed Aug. 17, 1989.

Gaele M. Barthold, Deputy Dist. Atty., Philadelphia, for Christie, appellant (at 914 and 1471) and Rendell appellant (at 914).

Charles W. Johns, Strafford, for Ribner, participating party.

Before CIRILLO, President Judge, and OLSZEWSKI and WATKINS, JJ.

OLSZEWSKI, Judge:

This is an appeal from two orders of contempt of court entered by the Court of Common Pleas of Philadelphia County during the joint trial of Raymond Martorano and Albert Daidone.

In 1984, appellant, Barbara Christie, an assistant district attorney, prosecuted a highly publicized case involving Raymond Martorano and Albert Daidone. The defendants had been charged with ordering the death of roofers' union leader, John McCullough. The case, which lasted six months, was tried before the Honorable Paul Ribner. Ultimately, Martorano and Daidone were convicted of first-degree murder and conspiracy.

During the proceedings, Christie was twice held in contempt of court. The first contempt citation occurred on April 3, 1984, during argument on pre-trial motions. This citation was based upon Christie's overall courtroom conduct and largely on her actions from the previous day. In imposing this citation, Judge Ribner stated the following:

I recessed court yesterday because I wanted to make sure that I had access to a complete transcript of what transpired on Friday afternoon and yesterday, April 2, 1984, before I would act in this matter.

I have reviewed those transcripts in detail, and they confirm what I believed I heard yesterday. Unfortunately, we had to recess the proceedings yesterday to take care of these matters.

There have been a number of instances throughout these proceedings wherein the conduct [of] the Assistant District Attorney reflected contempt for this Court. And it culminated in the outburst of yesterday.

Those remarks, in the opinion of this Court, were totally outrageous, totally false and were obviously made in connection with pending rulings regarding the witness who had been on the stand Friday afternoon and the answer to the Court's order of March 27, 1984, directing the prosecutor to set forth the names of the alleged co-conspirators in this case.

The comments following the outburst of yesterday by the Assistant District Attorney were undignified and discourteous to the Court. They were refusals to abide by the Court's proper admonition not to discuss the subject matter of the witness' testimony while the witness was under cross-examination on Friday afternoon and a refusal to abide by the order of March 27th. And there were a number of other comments, which are contained in the record, concerning the bias of the Court.

I will also observe for the record that the Assistant District Attorney on a number of occasions, and especially yesterday, exhibited a manifestation of total hostility and disdain for this Court.

This kind of conduct led to a disruption of the proceedings and obstructed the proper administration of justice. This was official misconduct of an attorney, an officer of this court. This Court cannot function if held in disrepute, if degraded, demeaned by any counsel in the case, which happened in this case. There was also the risk of pressure being applied to the Court to enter rulings favorable to the Commonwealth by counsel's unfair, totally unfair and false accusations of bias, favoritism and so on.

The actions of the Assistant District Attorney have prevented this Court from maintaining a dignified administration over the proceedings, which is required in any criminal proceeding. The Court cannot function if the Court is not able to maintain a dignified, impartial air, without any disruptive influences....

In this morning's newspapers appear several articles which, again, indicate how there has been a total obstruction of justice in this case by the acts of the Commonwealth.

On page 14 of today's Daily News ... here is an article containing comments which would make it appear to anyone reading this newspaper that this Court has been delaying these proceedings and that the Court has applied a double standard in favor of the defendants. Those are the words set forth in the article.

Those allegations are totally outrageous, totally false. These proceedings were lengthened by the insistence of the prosecutor on putting in numerous tape recordings, originals and duplicates, which this Court listened to, with courtesy, in an attempt to make proper rulings. There was also a period of a week or a week and a half when the prosecutor did not feel well, and the Court did not pressure her in any way into continuing with the case.

I think that the record will reveal that the case has moved along as expeditiously as possible.

This Court finds Ms. Christie in contempt of court and imposes a fine of five hundred dollars.... This action

will not in any way prevent these proceedings or the trial from being conducted in a totally fair and impartial manner by this Court....

N.T. 4/3/84, 2–5.

Accordingly, Christie was found to be in contempt of court, for which she was ordered by pay a five-hundred-dollar fine. Counsel for Christie then requested Judge Ribner to stay his order pending appeal. Following the denial of this request, counsel filed an immediate appeal to our Court along with a petition for supersedeas. Said petition was granted pending disposition of the appeal.

Subsequently, on May 29, 1984, Christie was again found to be in contempt of court. This citation was directly prompted by her negative reaction to a ruling on the inadmissibility of certain evidence. Specifically, Christie openly challenged Judge Ribner's ruling by stating, "I don't believe this ...". In Judge Ribner's 206–page opinion, he held that this citation represented the culmination of Christie's persistent and blatant disregard of his authority. Further, he stated that Christie openly and harmfully displayed contempt and hostility towards him, effectively and unnecessarily dragged out the trial, and repeatedly threatened the just nature of the trial by knowingly misstating facts and by repeatedly introducing prejudicial and inflammatory evidence. Judge Ribner stated that he was forced to contend with this behavior during a trial in which the jurors remained sequestered for six months. As a result of this isolation, many of the jurors became emotionally strained and eventually exhibited signs of unrest which included temper tantrums and escape attempts. Accordingly, Judge Ribner was faced with the task of expediting the trial at a reasonable pace without compromising its constitutional integrity. In effect, Judge Ribner held that Christie continuously undermined his laborious attempts to maintain a smooth and fair trial.

Pursuant to the issuance of this citation, counsel for Christie asked Judge Ribner to stay the order pending appeal. Judge Ribner refused, and Christie filed a second

appeal and petition for supersedeas with our Court. Said petition was granted. In response, Judge Ribner petitioned the Pennsylvania Supreme Court to quash our Court's directive. Due to Judge Ribner's lack of standing, however, his petition was dismissed.

On December 29, 1988, Judge Ribner filed his opinion. Following, in accordance with this Court's orders, Christie filed an appellate brief.[1] On appeal, Christie contends that: (1) the evidence was insufficient to support her two summary convictions for direct criminal contempt; (2) the trial court erred in its application of subsection (1) of 42 Pa.C. S.A. § 4132 to the instant convictions; (3) due process was violated when the trial court failed to allow counsel to defend Christie; and (4) the trial judge erred in declining to recuse himself and to refer the contempt charges to another judge for trial.

Initially, Christie argues that the evidence was insufficient to sustain the convictions. With regard to the first contempt citation, Christie contends that her objections, which ultimately led to her citation, were made pursuant to her duties and rights as an advocate and, as such, were not contemptuous. Further, Christie argues that her objections were not made with the intent to obstruct the proceedings and did not cause any delay in the trial. In an effort to justify any behavior which would support her convictions, Christie has prefaced and laced her arguments with allegations of favoritism by the trial judge towards the defense. Christie also argues that she, as an attorney, could not be convicted under subsection (1) of the statute.

The power to impose summary punishment for contempt is controlled by 42 Pa.C.S. § 4131. That statute provides:

1. Edward G. Rendell, former District Attorney of Philadelphia County, has also appealed from the trial court's order of April 3, 1984. Since he was not a party to the proceeding in the trial court, however, and has failed to demonstrate that he had a direct, immediate and substantial interest in the matter, he is not an aggrieved party and, as such, his portion of the appeal is hereby quashed. *See, In re Reorganization of Penn Cambria School District,* 40 Pa.Commw. 322, 397 A.2d 465 (1979); *Walker v. Walker,* 362 Pa.Super. 75, 523 A.2d 782 (1987).

The power of the several courts of this Commonwealth to ... inflict summary punishments for contempt of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

█ Initially, we will address the applicability of subsection (1) to the conduct of attorneys at trial. Although there is conflicting case law, recent Pennsylvania cases have mandated that subsection (1) is inapplicable to the conduct of attorneys at trial. *Matter of Creamer*, 365 Pa.Super. 170, 529 A.2d 27 (1987); *Matter of Campolongo*, 495 Pa. 627, 435 A.2d 581 (1981). In furtherance, these recent cases have also stated that the proper avenue for addressing the conduct of attorneys at trial is subsection (3). *Id.*

When applied to the instant case, it is clear that the trial court erred in proceeding under subsection (1) of the statute due to its inapplicability to attorneys. Accordingly, this Court will address Christie's arguments as they apply to subsection (3) of the statute.

Criminal contempt is a necessary sanction utilized by the courts to protect the dignity and structure of the court and to protect the interests of the general public. *Campolongo, supra.* This power, while inherent in all courts, is limited by the mandates of Section 4131 of the Judicial Code.[2] *Id.*

To support a conviction for contempt pursuant to 42 Pa.C.S. § 4131(3), there must be proof of the following elements beyond a reasonable doubt: (1) misconduct, (2) in the presence of the court, (3) committed with intent to obstruct the proceedings, (4) which obstructs the administration of justice. *Matter of Creamer, supra.* In utilizing the above elements, this Court has sought to balance the

2. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 4131 (1982).

rights of an attorney to an uninhibited judicial forum which preserves the right to zealous representation, with the right of a trial judge to authoritatively maintain order and integrity within his or her courtroom. *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978).

■ It is well-established that for conduct to constitute an obstruction of the administration of justice, it must significantly disrupt the proceedings. *Commonwealth v. Rubright*, 489 Pa. 356, 414 A.2d 106 (1980). Conduct which interrupts and delays the proceedings may constitute conduct which obstructs the administration of justice. *Commonwealth v. Falkenhan*, 306 Pa.Super. 330, 452 A.2d 750 (1982). Remarks that are solely injudicious, disrespectful, or insulting do not warrant the imposition of a summary conviction for contempt of court. *Matter of Campolongo*, *supra*. While it has clearly been held that the mere showing of noncompliance with a court order or misconduct is insufficient to show contempt, such an act done with wrongful intent may constitute contempt. *Weingrad v. Lippy*, 300 Pa.Super. 76, 445 A.2d 1306 (1982).

■ When reviewing the propriety of a contempt conviction, this Court places great reliance upon the discretion of the trial judge. *Commonwealth v. Hawkins*, 322 Pa.Super. 199, 469 A.2d 252 (1983). As such, this Court is confined to a determination of whether the facts support the trial court's decision. *Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28 (1987).

Instantly, the first contempt citation was based upon Christie's remarks on Friday, March 30, 1984, and Monday, April 2, 1984.[3] On March 30, the court recessed while the

---

**3.** Seemingly, the trial court has attempted to qualify Christie's actions throughout the trial as a basis for her contempt convictions. Although we find it appropriate to review the entire record for a determination as to the propriety of the contempt convictions, we also find it appropriate to base the thrust of our determination on the incidents which directly contributed to the issuance of each contempt citation. *Commonwealth v. Garrison, supra.* (this Court acknowledged that attorney's behavior was offensive throughout the trial, but decision to reverse contempt conviction was solely based upon attorney's remark which triggered the issuance of the contempt citation).

defense was in the middle of cross-examining a witness on his qualifications. At that time, the following exchange took place:

MR. BROWN: I haven't finished, Judge, if that's what— on Monday morning I'll be very—

THE COURT: All right. We'd better start promptly at nine-thirty on Monday morning.

MR. BROWN: I'll order from Mr. Muller—I already owe him some money—just the last fifteen minutes or so of my examination.

THE COURT: All right. I was going to suggest we take a look at that and see what we have.

MR. BROWN: May we ask that there be no consultation with the witness, who is under cross-examination? ...

MISS CHRISTIE: I haven't had redirect examination of the witness. If I am to be permitted to redirect the witness as to his qualifications, in view of counsel's questions—your Honor allowed those questions over the Commonwealth's objection—questions which, it is the Commonwealth's recall, referred to statistics and attitudinal research. And the Commonwealth certainly would ask leave to have redirect examination of this witness.

THE COURT: The witness is under cross-examination.

MISS CHRISTIE: No, he is not, sir. I haven't even been able to ask him one question relative to anything other than his qualifications.

MR. BROWN: Your Honor, if I can continue for an hour on Monday, we may save a lot of time, an awful lot of time. But he is on cross-examination, sir, in this area.

THE COURT: The witness is under cross-examination. Are you saying that you won't follow a direction to the witness not to discuss with counsel, at this phase of his testimony, while he is under cross-examination?

Further, the trial court has directed our attention to newspaper articles which reiterated certain occurrences during the trial. Since our review is confined to the record, *Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28 (1987), however, it would be inappropriate to consider these articles in making our determinations.

MISS CHRISTIE: I may wish to prepare and discuss with the witness his testimony on Monday—if we ever get to his testimony on Monday.

In my opinion, to suffer under a restriction because I cannot speak to the witness, when I have not even had a chance to yet direct examine this witness—

THE COURT: We are not talking about the direct examination with respect to the substance of his testimony. We are talking about his qualifications. He is now under cross-examination with respect to his qualifications. And I don't think it would be proper for you to discuss the present cross-examination of the witness while he is still under cross-examination, any more than it would be for you to walk up to him while he is on the stand.

MISS CHRISTIE: Then we are applying a double standard. Because that's exactly what was going on during the entire time that Dr. Kadane was on the stand, your Honor. I don't quite understand the standard being applied to the Commonwealth and not to the defense.

MR. BROWN: I have not been talking to him. I deliberately did not. He wasn't even here.

THE COURT: My understanding of the law is that if a witness is under cross-examination the attorney who offered that witness cannot walk up to him and discuss his testimony or otherwise confer with him while he is under cross-examination. And the witness should consider that he is still under cross-examination while he is off the stand and should not consult with counsel. And any direction to the witness to that effect is a proper admonition.

MISS CHRISTIE: Then I move to strike Dr. Kadane's testimony. He was on cross-examination on Wednesday, your Honor, when we recessed, at recess, during the recess, and as well this morning. And there was consultation between counsel and the witness, Kadane, as to the substantive aspects of his testimony—let alone before the witness, in this instance, has even been direct examined as to the substantive merits of his testimony.

THE COURT: We are talking about the cross-examination of the witness as to his qualifications. I am directing the witness not to discuss his qualifications with his attorney until cross-examination is finished. Are you telling me you won't follow that admonition? If you are, I'll bar the witness' testimony right now.

MISS CHRISTIE: I'm telling the Court—

THE COURT: Answer me yes or no. I'm not going to play games with you. My direction to the witness—

MISS CHRISTIE: The only thing the Commonwealth—

THE COURT: All right. The witness' testimony is barred. If I can't get a word in edgewise, that's the end of it. We'll proceed with anything else you have Monday morning.

MISS CHRISTIE: I would ask your Honor's reconsideration of that ruling.

THE COURT: Not while you are talking. If I can't get a word in edgewise, that's it.

MISS CHRISTIE: I am not speaking. I would ask your Honor's reconsideration.

THE COURT: Recess until Monday morning.

N.T. 3/30/84, 226–230.

On the following Monday, another verbal exchange took place between Christie and the court. This exchange was triggered by Christie's response to the court's directive to provide the defense with a list of alleged co-conspirators. Christie's list included the names of 70 people. Thereafter, the following verbal interchange took place:

THE COURT: And you should be able to decide right now whom you are going to call and for what purpose. If not, if your preparation is that fuzzy—

MS. CHRISTIE: My preparation in this case isn't fuzzy at all. There's something in this courtroom that's fuzzy, but it certainly isn't my preparation in this case. I have been attempting to put this case on for two months to a forum that appears to see the right side of the courtroom and not the left side of the courtroom.

Now, my preparation is fine in this case, Your Honor. And if I am ever permitted to proceed with the case, ever permitted to be heard from, ever permitted to cross-examine a witness without being accused of being dilatory or having some purpose in mind for lengthening the cross-examination of the witness, ever permitted to offer a witness without having the testimony of that witness barred twice amidst a hasty retreat from the bench, then maybe I can present my case to this Court, however contemptuous that may sound to Your Honor.

THE COURT: Let's go through a few of these items. You said something in the case is fuzzy and it's not your preparation. What are you referring to?

MS. CHRISTIE: I rest on the record of this nine-week travesty here that passes for a pretrial motion.

N.T. 4/2/84, 18–31.

Subsequently, Christie accused the court of applying a "double standard" and cited certain instances from the record to support her accusation, including the court's actions on the previous Friday. At that time, largely due to its desire to review the foregoing statements, the court recessed. The following day, the court reconvened and held that Christie's actions on the previous day warranted a citation for criminal contempt of court. In his opinion, Judge Ribner states that this determination was largely based upon Christie's use of the word, "travesty," and on her constant interruptions.

In resolving whether Christie's actions warranted a contempt conviction, it is helpful to review prior case law. Therein, the following behavior was held to constitute criminal contempt: (1) an attorney's failure to appear as directed at a hearing, *United States v. Lespier,* 558 F.2d 624 (1st Cir.1977); (2) an attorney's attempt to pressure court into a favorable ruling by accusing the court of being a tool of the government, *United States v. Schiffer,* 351 F.2d 91 (6th Cir.1965); (3) fighting with deputy sheriffs in the courtroom after they stopped an unlawful attempt by criminal defendants to leave, *Commonwealth v. Patterson,* 452 Pa. 457,

308 A.2d 90 (1973); (4) constantly interrupting the Commonwealth's closing argument and refusing to behave in an orderly manner, *Commonwealth v. Snyder*, 443 Pa. 433, 275 A.2d 312 (1971); and (5) interrupting the proceedings and calling the judge a "hatchet man for the State," "a dirty S.O.B.," and a "dirty tyrannical old dog," *Mayberry Appeal*, 434 Pa. 478, 255 A.2d 131 (1969), vacated on other grounds, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

In contrast, the following was held not to constitute contemptuous behavior: (1) attorney's attempt to place on the record what he considered to be inappropriate remarks by the trial judge, *Commonwealth v. Restifo*, 339 Pa.Super. 225, 488 A.2d 633 (1985); (2) attorney's repeated attempts to address issues which the court had foreclosed, *Matter of Creamer, supra.*; (3) defense attorney's objection to court's direction that defendant stand to be identified by witness, and subsequent inquiry as to whether his client "[was] to be flagellated in front of the jury," *Commonwealth v. Garrison, supra.*; and (4) attorney's continued assertions that his line of questioning on cross-examination should be allowed, despite objections to the same which were previously sustained, *Commonwealth v. Collier*, 353 Pa.Super. 543, 510 A.2d 796 (1986).

▮ Instantly, Christie's actions on Friday, March 30, coupled with her actions on the following Monday, warranted a citation for criminal contempt. While said actions are seemingly less reprehensible than the above-cited cases which upheld the existence of contemptuous behavior, they will not be ignored by this Court. The record clearly shows that Judge Ribner acted with admirable restraint in handling Christie's outwardly abusive behavior. Despite her hostile confrontations, he gave her the necessary leeway to prosecute her case. Only when her behavior clearly threatened and interfered with his ability to effectively preside over the case did he choose to issue the contempt citation. In doing so, he took ample time to review the record and to make this determination. Christie's behavior constituted an intentional and flagrant challenge to Judge Ribner's author-

ity which was undoubtedly designed to intimidate the Judge into indulging her desires.

Unequivocally, Christie's overall conduct at the trial was exhausting. She challenged everything and pushed the limits of attorney advocacy. We can only envision the hardship of attempting to maintain an orderly and dignified trial when continually battling with such a stubborn and defiant prosecutor. She continually halted the proceedings and stripped the court of its dignity and control.

When viewed in accordance with the statutory mandates of 42 Pa.C.S. § 4131(3), the Commonwealth has proven beyond a reasonable doubt that Christie committed a misconduct in the presence of the court, and that this conduct was intended to obstruct the proceedings. Further, we find that said conduct did obstruct the proceedings in that it "prevented [the trial court] from maintaining a dignified administration over the proceedings" and resulted in an unnecessary delay. For this Court to hold otherwise would be to effectively strip a trial judge of his or her ability to assert authority where necessary and to preserve the integrity and dignity associated with a court of law.

The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy. Instead, it will become an open forum for theatrics. Accordingly, we confidently agree with the determination of the trial court and hold that the facts clearly support its decision to issue the first criminal contempt citation.

■ The second contempt citation was the result of Christie's verbal response to a ruling made by Judge Ribner. Directly following the ruling, Christie complained, "I don't believe this ...". Herein, although indignant and disrespectful, this comment does not exhibit contemptuous characteristics. Unlike the behavior which prompted the

issuance of the first contempt citation, a review of the record indicates that the actions in question did not not overtly interfere with the court's ability to proceed with the trial, nor did it result in the obstruction of justice. Accordingly, we cannot sustain the trial court's determination as to the second contempt citation.[4]

■ Next, Christie alleges that she was denied due process as she was not given sufficient notice of the charges and, therefore, was unable to defend herself or to present mitigating factors to justify her behavior. Due to our disposition of the second contempt citation, our focus will be on Christie's argument as it relates to the first contempt citation.

In imposing summary punishment, a court is permitted to "eliminate the traditional steps involved in an adjudication". *Falkenhan, supra. (quoting Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773 (1925)); *Commonwealth v. Stevenson,* 482 Pa. 76, 393 A.2d 386 (1978) (plurality opinion). Accordingly, formal hearings, argument and findings are unnecessary where the administration of justice is threatened so as to require such summary action. *Falkenhan, supra.*

Instantly, a review of the record demonstrates that Christie's actions warranted the imposition of summary punishment. She continually tampered with Judge Ribner's authority and overtly threatened his ability to effectively preside over the proceedings. As such, Judge Ribner was justified in summarily imposing the citation in lieu of complying the conventional procedural mandates.

■ Christie also contends that Judge Ribner erred in failing to recuse himself. It is well-established that recusal is required in contempt proceedings where the record demonstrates a "running, bitter controversy" between the contemnor and the trial court. *Falkenhan, supra; Commonwealth v. Reid,* 494 Pa. 201, 431 A.2d 218 (1981). Where,

---

**4.** Due to our disposition of this issue, we need not reach the balance of the appellant's contentions as they relate to the second contempt citation.

however, no such "bitter" controversy exists, recusal is unnecessary. *Falkenhan, supra.*

Instantly, while the record does reveal the existence of a "running" controversy between Christie and the trial court, there is no indication that said controversy was "bitter". In contrast to Christie's contentions, the trial court responded to her behavior with a patient, learned, and detached hand. As such, the trial court did not err in failing to recuse itself.

Accordingly, the convictions of Christie of direct criminal contempt are affirmed in part and reversed in part. Order of April 3, 1984 affirmed and order of May 29, 1984 reversed.