J-S40038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JASON PARKER | : | |
| | : | |
| Appellant | : | No. 956 EDA 2016 |

Appeal from the Judgment of Sentence February 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  MC-51-MD-0000081-2016

BEFORE:   OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                **FILED SEPTEMBER 25, 2017**

Jason Parker appeals from the judgment of sentence entered on February 12, 2016, in the Court of Common Pleas of Philadelphia County following his summary conviction of direct criminal contempt.[1]  Parker received a sentence of two months, 28 days to five months, 29 days' incarceration.  In this timely appeal, Parker claims there is insufficient evidence to support his conviction.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we reverse and vacate the judgment of sentence.

Our standard of review is as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. § 4132(3).

> [I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision.

*Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28, 31-32 (1987)(internal citations omitted); *Accord Ricci v. Geary*, 447 Pa.Super. 609, 670 A.2d 190, 191 (1996). In making this examination: "we must evaluate the entire record and consider all evidence actually received." *Commonwealth v. Falana*, 548 Pa. 156, 161, 696 A.2d 126, 128 (1997) quoting *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).

A court's power to find an individual in criminal contempt is conferred by Section 4132 of the Judiciary Code, which provides in relevant part:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
> * * *
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132(3). Consequently, to sustain a conviction for direct criminal contempt under this provision there must be proof beyond a reasonable doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice. *Williams v. Williams*, 554 Pa. 465, 469, 721 A.2d 1972, 1073 (1998); *Commonwealth v. Martorano*, 387 Pa.Super. 79, 563 A.2d 1193, 1197 (1989), *appeal denied* 529 Pa. 632, 600 A.2d 952 (1991).

*Commonwealth v. Williams*, 753 A.2d 856, 861 (Pa. Super. 2000).

On February 12, 2016, Parker was in court for a **_Grazier_**[2] hearing. Parker was seeking to represent himself on appeal in another contempt matter.[3] We quote two relevant portions of that hearing.

> The Court: All right.  Mr. Parker, let's go.  All right, let's go, Mr. Parker.
>
> Parker: Good morning, Your Honor.
>
> The Court: Good morning to you, Mr. Parker.
>
> Parker: (Unintelligible)
>
> (Pause)
>
> The Court: All right.  Mr. Parker, let's go.
>
> Parker: (Unintelligible)
>
> The Court: No.  You're right there, Mr. Parker.
>
> Parker: Here? Okay, we'll do it right here, Your Honor.
>
> The Court: Okay, Mr. Parker.
>
> Parker: How you doing?
>
> The Court: So you're here for a PCRA Hearing.  You are representing yourself, right?
>
> Parker: Yes, sir; because counsel is not doing anything.

---

[2] **_Commonwealth v. Grazier_**, 713 A.2d 81 (Pa. 1998).

[3] That matter is also before this appellate panel.  **_See Commonwealth v. Parker_**, 3318 EDA 2014, J-S40037-17.  This related case helps provide context to the instant matter.  Interested parties may refer to that case.

The Court: All right. I appointed you counsel, right? Mr. Earl Raynor, right?

Parker: He's not doing anything. He's a bad guy. He's a bad dude.

The Court: So you're upset with Mr. Raynor, right?

Parker: Very upset.

The Court: All right. Can you hire your own counsel?

Parker: I'll do it myself, Your Honor.

The Court: Okay, good. You'll hire your own counsel.

Now, Mr. Raynor – Mr. Parker.

Parker: Yes, sir.

The Court: It's come to my attention you were videotaping the authorities here, and it's the CJC [Philadelphia Criminal Justice Center], right? I guess you –

Parker: That's not true, Your Honor.

The Court: Okay. Well, fine. You cannot videotape here. You cannot videotape here, and your videotape is ordered, by court order, confiscated. I order the sheriffs to take the videotaping equipment that you had, taping out front of the CJC, inside the CJC. Wherever you may have videotaped, it's ordered confiscated.

Parker: I was outside the building, in the waiting room, Your Honor, in the lobby.

The Court: You cannot do that.

Parker: There's no signs posted that you can't use your phone in the lobby, Your Honor.

The Court: Well, I order it, by court order. This is a court order. It's confiscated.

Now, turn it over to the sheriffs right now.

N.T. Grazier Hearing, 2/12/2016, at 3-5.

The trial court continued questioning Parker about his cell phone and then changed topics again, which led to this exchange between Parker and the Court.

> The Court: Constitutional statements.  I know you're trying to get an audience.  And so that they[4] know, you're practicing law without a license.
>
> Parker: I'm not practicing anything.
>
> The Court: You took money from poor people and –
>
> Parker: That's a lie.
>
> The Court: -- said you'll (unintelligible).
>
> Now, you're facing contempt again.  **Now, I order you to be quiet.  I will give you - the next statement out of your mouth will be five months and 29 days.**
>
> You have a sentencing coming up in the Court of Common Pleas where you're found guilty by jury, of 12 individuals, of practicing law without a license, false impersonation.  You were acting like a – you took money from poor people.  That's who you took money from, poor people who gave you their money and you took them.
>
> And you interfered with the public defender, and I have the record here, so read it.  So there it is.
>
> Now I am finished with you.  Your next date for status, and you must be prepared to go on – and you want to hire your own

---

[4] This appears to be a reference to the people, who were also present in the courtroom.

lawyer, you don't want Earl Raynor, who I gave to you. Your next status date, in this room, for status only, for you to file your paperwork for your PCRA, which is – that's the – get it out. You were either drinking on a subway or smoking on a subway. They stopped you. You had a summary offense. I threw you out of the CJC. I called down to the room. They postponed and gave you another year. You were found guilty in absentia. I waived the $30 fine, or $100 fine. But you filed a PCRA on all this. Okay. So status for you to file all of your motions will be on 30 days from today. Today is March - February 12th. Your date is the 20 – the 11.

Parker: Your Honor, you're outside of the scope here, Your Honor, this is not for the smoking on the train, this is for –

The Court: **Okay. Fine. I told you –**

Parker: **When I came** (unintelligible).

The Court: **No more.**

Parker: **- for the contempt**

The Court: **I find you in contempt. Five months and 29 days.** Sheriffs take him.

N.T. Grazier Hearing, 2/12/2016, at 6-8 (emphasis added).

The trial court explained, in its Pa.R.A.P. 1925(a) opinion, that Parker was "told repeatedly by this Court to remain quiet or he would be held in contempt of court." Trial Court Opinion, 4/22/2016, at 1. Nonetheless, Parker, "proceeded to ignore these warnings and continued to speak." *Id*. In doing so, the trial court determined,

These statements were also made with the intent to disrupt the proceedings, as not only were the statement made immediately after [Parker] was told not to speak. [Parker] had consistently interrupted this Court during the hearing to offer unnecessary or untrue information, including insisting his name was "The Wolf," and arguing the facts of the case underlying 3318 EDA 2014.

Finally, the statements made by [Parker] disrupted the administration of justice as they were made immediately after this Court warned [Parker] not to speak again. Further, they were made as this Court was attempting to conclude the hearing, the statements prolonging the conclusion and holding up this Court. Therefore, [Parker] was in Contempt when he made the statements on February 12, 2016.

*Id*. at 2 (citations to record omitted).

We begin our analysis by noting that whatever transpired in court on February 12, 2016, it was not a *Grazier* hearing.[5] The trial court made no attempt to inquire regarding any of the factors listed in Pa.R.Crim.P. 121, regarding waiver of counsel.[6] After Parker indicated he wanted to represent

_____

[5] Despite calling it a PCRA hearing at the opening of the hearing, in its Pa.R.A.P. 1925(a) opinion, the trial court stated, "On February 12, 2016, the defendant, Jason Parker, appeared before this Court for a *Grazier* hearing."

[6] Specifically, Pa.R.Crim.P. 121 states, in relevant part:

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

*(Footnote Continued Next Page)*

himself, the trial court responded, "Okay, good. You'll hire you own counsel." *Id*. at 4. Then, without further colloquy, the trial court, *sua sponte*, moved onto other topics.

When the court informed the courtroom at large that Parker had been convicted of smoking or drinking on a subway, Parker simply told the trial court that smoking on the subway had nothing to do with why he was in court that day and appeared to try to return the conversation to why he came to court that day. At that point, the trial court found Parker in contempt.

*(Footnote Continued)* _____

> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>
> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>
> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121 (1),(2). **See also**, **Commonwealth v. Stossel**, 17 A.3d 1286, 1289 (Pa. Super. 2011); **Commonwealth v. Robinson**, 970 A.2d 455 (Pa. Super. 2009).

Our review of the certified record leads us to find that the facts do not support the trial court's findings. Although the trial court has asserted Parker "consistently interrupted this Court to offer unnecessary or untrue information,"[7] our review of the record demonstrates it was the trial court that directed the hearing away from the purpose of the ***Grazier*** hearing by accusing Parker of improperly using his cell phone in the lobby of the Criminal Justice Center and confiscating the phone.

After confiscating Parker's phone, the trial court then berated Parker regarding his recent criminal charges. When the trial court finished that, and began to close the hearing, Parker seemingly attempted to return the conversation to the original topic. It was at that time Parker was found to be in contempt.

The trial court has opined that Parker's final comments were designed to disrupt the administration of justice by "prolonging the conclusion and holding up this court." We disagree. Because the record reflects that the trial court failed to take any steps in fulfilling the purpose of a ***Grazier*** hearing, we conclude Parker cannot be held in contempt questioning the court's conclusion of the hearing with a reference to an unrelated case that involved Parker.

---

[7] Trial Court Opinion at 2.

We understand the frustration this trial court. However, the record shows that Parker did not actually obstruct the administration of justice. Parker attended a hearing expecting a **Grazier** hearing. Under the facts of this matter, Parker's attempt to question the court's reference to his other case is not contemptuous behavior, even if the trial court told him not to speak.

Judgment of sentence reversed. Finding of contempt is vacated.

Judge Dubow joins this memorandum.

President Judge Emeritus Stevens concurs in the result.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/25/2017*

- 10 -